# DECISIONS

OF THE

# SUPREME COURT OF FLORIDA.

## JUNE TERM, A. D. 1889.

25    435
57    123

CATHERINE S. HART, EXECUTRIX OF O. B. HART, DECEASED, NAPOLEON B. BROWARD, SHERIFF, ADMINISTRATOR OF THE ESTATE OF PARAN MOODY, DECEASED, AND ABEL S. BALDWIN, APPELLANTS, VS THOMAS E. STRIBLING AND MARY E. STRIBLING, HIS WIFE, APPELLEES.

1. Under the statute the judges of the Supreme Court of this State are required, in deciding cases, to prepare and make a syllabus of the points and principles intended to be decided by the court, which shall be published in the reports in lieu of that usually prepared by the reporter; but where a Judge, who writes the opinion of the court, expresses a view upon any point or principle which he is not required to decide, his opinion as to such point or principle, is an *obiter dictum*, and it is binding upon no one.

2. Where a guardian settles with his ward, who has, at the time, attained her majority, and without the knowledge or consent of the sureties on the guardian's bond; and in his settlement with the ward, the guardian, for a balance due the ward gives her his note at twelve months, with 12 per cent. interest per annum, and the ward, by her acts, confirms such settlement, and acquiesces therein for eight years, no fraud or improper influence being shown, and the guardian, in the meantime becomes insolvent : *Held*, That the sureties on the guardian's bond were released therefrom by such acts of the ward.

28

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion of the court.

Judge McClellan, of the First Circuit, sat in the place of Raney, C. J., disqualified.

*Fleming & Daniel, J. M. Barrs* for Appellants.

*Hartridge & Young* for Appellees.

The original bill was filed in this case by appellees against appellants and others, and alleged that O. B. Hart, deceased, was the guardian of Mary E. Hart, now Mary E. Stribling, one of complainants; that O. B. Hart was dead, and that Catherine Hart was his executrix; that he gave bond in the sum of $8,000 for the faithful discharge of his duties with the defendants, Abel S. Baldwin and Paran Moody as his sureties; that said bond was approved and filed by the Judge of Probate of Duval county; that he received large sums of money belonging to his ward; that on several different occasions he applied for and obtained an order for the sale of, and did sell, a large amount of valuable land of his ward, and did give two additional bonds, the sureties on which were made parties defendant. The bill prayed an account and decree for what might be found due complainant, Mary E., from her late guardian. All the defendants were served with process and appeared. Decrees *pro confesso* were regularly entered against all the defendants, a decree was rendered referring the cause to a master to take an account and a final decree was rendered. Nearly two months after the final decree was rendered and entered on the minutes the solicitors of certain defendants gave notice that they would, two days later, move the court to vacate this decree and allow them to answer and defend. The

court granted this motion and made a decree setting aside said final decree and vacating the decrees *pro confesso* and allowing answers to be filed.    Answers were filed setting up that on the 4th day of June, 1872, immediately after the ward became of age, the said guardian did fully account to her for all moneys and property which had come to his hands, and that upon such accounting she gave to her guardian a receipt and took his note for the amount due, which she subsequently presented to his executrix and filed as a claim against his insolvent estate.    The only evidence to sustain this defence was the deposition of Catherine Hart, the receipt and note and proof of the filing of the note.    Upon the hearing the court below dismissed the bill against·all the sureties upon the ground that they had been discharged by the laches of complainant, and rendered a decree against the executrix of the deceased guardian.    Stribling and wife appealed from this decree, and in their petition of appeal assigned as error the granting of the motion to vacate the decree rendered upon the decrees *pro confesso* and allowing the defendants to answer, and the decree dismissing the bill as to the sureties.    These assignments of error were fully argued by the counsel for the respective parties at the June term, 1883, of this court, as will fully appear from the briefs of counsel on file in this court.    This court decided at the June term, 1883, that the Circuit Court had erred in vacating the decree and in holding that the sureties were discharged, and this court issued its mandate directing the decree of the 11th March, 1882, to stand as the final decree of the Circuit Court, subject to such proceedings as might be appropriate for the correction of any error therein.    See 20 Fla., 260, 261, 263.    At the June term, 1884, this case was again before this court upon an appeal taken by Catherine Hart, executrix *et al.*, and the record as the case then came before the court showed nothing but the bill, process and re-

turn, the appearance of the several defendants, the decrees *pro confesso*, report of the master and the final decree, and this court says (see 21 Fla., 137 and 138,) : " Our enquiries are limited to two general questions, was there illegality in the proceedings anterior to the default ? Is the decree here rendered consequent upon the matter of the bill and warranted by the case made by the bill ? Upon the former appeal we held the proceedings anterior to the default legal. We have left, therefore, here the second question alone to determine." This court then held on the second appeal that the decree was not warranted by the averments in the bill, because the liability of the sureties on the additional bonds is subsidiary and auxiliary and no suit can be maintained against them until the penalty of the general bond, is exhausted. The decree was reversed and the cause remanded, with directions to dismiss as to the sureties on the additional bonds. As to the obligors on the original bond, the bill was ordered to be dismissed unless by amendment a case of primary liability on their part was made, to which new case they were given the right to make defence. Soon after the mandate of this court was filed the appellees applied for and obtained permission to file an amended bill against the appellants. The amended bill contains substantially the same averments as the original bill with the additional averments that the estate of O. B. Hart, the deceased guardian, is insolvent and that the complainant, Mary E., had no home except the home of her uncle and guardian, and no one else to look to for advice and guidance except him.

The answers set up the same defense as was set up to the original bill when the Circuit Court allowed the defendants to come in and answer. The only evidence offered by appellants in support of their defense is the same deposition, receipt, &c., that was used in evidence on the hearing

on the original bill; the only additional evidence in the case is the deposition of Mrs. Stribling, and she testifies to nothing which tends to sustain the defense.

All the questions raised upon the present record were raised when the case was first here, were argued by counsel and decided by this court. 20 Fla., 235. What has been decided in this case on the first appeal is the law of this case. What has been decided by the Supreme Court on appeal cannot be re-examined in the same suit.

Emily Wilson, executrix, *et al.*, vs. Fridenburg, 21 Fla., 389; Clark vs. Keith, 106 U. S., 464; Supervisors vs. Kennicott, 94 U. S., 498; Taylor vs. Maguire, 17 Wal., 283; Noonan vs. Bradley, 12 Wallace, 129. The foregoing rule of law is, in my opinion, conclusive of this case, but, as the court might not agree with me, I proceed to answer the other points. The testimony of Mrs. Hart is that O. B. Hart, the deceased guardian, was also the uncle of Mrs. Stribling, and that she resided in her said uncle's family until his death, and constituted a part thereof. That instead of accounting to her, as alleged in the answers, he gave her a receipt to sign and his promissory note, stating that he did not know that he owed her all of it, but he wanted to be sure and cover all that was due. (See trans., page 68.) No one was present when this took place except the guardian and his wife and the ward, and it was in the guardian's house. There is no pretense that there was any other accounting on the part of the guardian, and the burden of proof is on the appellants.

Giving the note was no payment. 14 Fla., 467.

Mere indulgence by the complainant in no way discharged the sureties. Dorman vs. Bigelow, 1 Fla., 281; Mitchell vs. Cotton, 3 Fla., 134; Pfifer vs. Sullivan & Knapp, 17 Fla., 144; Newell vs. Hamer, 4 Howard, 684; (35 Am. Decs.,

415 ;) Stribling and wife vs. Hart, ex., *et al.*, 20 Fla., 260, 261 ; Leading Cases in Eq., vol. 2, part 2, 1,000.

Contracts made between guardian and ward soon after the latter comes of age are viewed with so much distrust by courts of equity that they are voidable by the ward if he seeks within a reasonable time to avoid them. Such a contract can be supported only where the guardian, previous to the contract, has made a full and fair disclosure of all the facts or circumstances which have come to his knowledge, so as to enable the ward to deal with him on equal terms. Johnson vs. Johnson, 5 Ala., 90; Say vs. Barnes, 8 Am. Dec., 79 ; 54 Ala., 512 ; Perry on Trusts, Sig., 923.

A ratification or confirmation, to be operative as such, must be made with a full knowledge of all the facts and circumstances, the ignorance of which rendered the previous contract void, and with the intent that such act should confirm it. 5 Ala., 90.

Before there could be a valid settlement between the guardian and the ward there must have been a real and a valid accounting. Johnson vs. Johnson, 2 Hills Ch. (29 Am. Dec., 72) ; Commonwealth vs. Moltz, 10 Penn. St., 529 ; Say vs. Barnes, *supra;* Baines vs Barnes, 64 Ala., 383.

The relation existing in this case between the guardian and ward and her dependence upon him for protection makes it eminently proper that the above rule of law be rigidly enforced.

The defense set up, except the matter of laches, is the claim of a release. 20 Fla., 261.

The only thing which could sustain a release is a real and fair accounting, and the burden was upon appellants to show its fairness. 29 Am. Decs., 72 ; Perry on Trusts §§428, 923 ; Jones vs. Loyd, decided by Sup. Ct. of Ill., May, 1886; (6 Western Reporter, 35 ;) Waller vs. Armistead, 2 Leigh, 11 ; (21 Am. Dec., 594.)

There was no release. 20 Fla., 261.

The condition of the bond was broken when the guardian undertook to give his individual note in settlement of his liability as guardian, *not even asking his ward's consent thereto.* Gillette vs. Wiley, 15 Western Reporter, 171 ; Supreme Court of Ill., June, 1888.

It is the duty of sureties on the bond of a guardian to make enquiry and see that their principal discharges the obligation resting upon him, whether he be solvent or insolvent. Gillette vs .Wiley, *supra;* (Supt. Ct. Ill., June, 1888.)

There is no rule of law defining what time will bar an equitable demand. Amos vs. Campbell, 9 Fla., 187 ; Hatch vs. Hatch, 9 Vesy Jr., 292.

Courts of equity, in determining what time will bar an equitable demand, will be influenced by the statute of limitations. The limitation to the right of action on the bond in this case is twenty years from the time the ward came of age. There was no laches which would discharge the sureties in this case. Gillette vs. Wiley, *supra ;* Neel vs. Commonwealth, Supt. Ct. of Penn., Nov. 1886 ; (5 Central Reporter, 483 ;) 20 Fla., 261 ; Leading cases in Eq., vol. 2, part 2, 1000 1001.

Is the complainant estopped by her conduct from asserting her rights as against the sureties? The doctrine of estoppel in *pais* is, that where one has so acted as to lead another to suppose a state of facts to be true, which are not true, he will not be allowed to show the truth to the prejudice of the person he has misled. Camp vs. Mosely, 2 Fla., 171 ; Gillette vs. Wiley, *supra.*

Before these appellants can claim that appellee is estopped from asserting her claim against them it must appear that they knew of her action and were lulled into security thereby to their damage. Now they do not pretend that they knew of the transaction between the appellee and

her guardian prior to the filing of the original bill in this case, nor does the testimony disclose any such knowledge of her presenting the note as a claim against her uncle's estate.

It cannot be said that the sureties were third parties charged with no duty in respect of the matters under consideration. They were under contract obligation to the ward to the extent of her money going into the hands of her guardian, and had undertaken that he would faithfully perform his duties in respect thereof. Gillett vs. Wiley, *supra*.

On the former hearing the present appellants relied upon Aaron vs. Mendel, 78 Ky., 427, (39 Am. Repts., 248,) and Kirby vs. Taylor, 6 Johnson's ch., 248. In the first named case it appears that a release had been executed, and that the surety was aware that a release had been executed, but not of the means by which it had been obtained. The complainants having acquiesced in the settlement for several years, the surety was lulled into supposed safety and prevented from seeking indemnity, hence he was discharged. In the case of Kirby vs. Taylor there was a release which the Chancellor says he thinks was fairly and freely given, and was a valid release to the guardian, and thereby the surety was discharged. The last named case attempted to draw a distinction between a discharge and the acquisition of gain by the guardian and in this respect its doctrine is denied in Waller vs. Armistead, 2 Leigh, 11.

I submit that the doctrine of these cases is not in conflict with the position taken in behalf of appellees.

The second assignment of error is not entitled to consideration by this court, because the record shows that no exception was taken to the ruling of the master and the question was never brought to the consideration of the Chancellor. This court will not impute error to the Circuit Court for confirming a master's report which has not departed from the authority conferred upon him by the decree

of reference, when the record shows that appellants have acquiesced in the report by not excepting thereto.

Independent of this, the master's ruling on the point was right; the credit asked was objected to and no evidence was offered in support thereof.

The Circuit Court did not err in directing the master to make annual rests in stating the account. The statutes of this State direct that accounts of guardians shall be so stated. McClellan's Digest, page 94, sec. 63. The decree in directing that annual rests should be made followed the rule laid down by this court. Sanderson vs. Sanderson's admr., 17 Fla., 862; Eppinger, Russell & Co., et al., vs. Canepa, Ex., 20 Fla., 288, 289.

The appellants cannot complain that the Circuit Court erred in decreeing that appellants pay to the appellees a less sum than the master reported was due.

The fact that the able and distinguished counsel for appellants have made such an assignment of error is proof that, like drowning men, they were grasping at straws.


MITCHELL, J.: O. B. Hart was the guardian of Mary E. Hart, now Stribling, and Moody and Baldwin were the sureties on Hart's bond as such guardian.

Hart obtained orders, under the statute, to sell real estate of his ward, and was required to give additional bonds to secure the ward for moneys which might come to his possession under said orders of sales, and C. L. Robinson, H. H. Hovy and Ozias Buddington became sureties for Hart on the additional bonds.

The sales were made and considerable sums of money arising therefrom went into the hands of the guardian. The ward attained her majority August 23d, 1871, and O. B. Hart, the guardian, died March 18th, 1874, leaving Catherine S. Hart (widow of the deceased) executrix of his will.

The ward, Mary E. Hart, was married to Thos. E. Stribling on the 23d of July, 1879. The original bill was filed on the 3d of September, 1880. The bill, among other things, alleges that large sums of money belonging to the ward went into the possession of the guardian, for which he never accounted. A final decree was rendered in the cause in favor of complainants, but was subsequently opened, and from the order of the Chancellor opening such final decree complainants appealed, and in Stribling *et ux.* vs. Catherine S. Hart *et al.*, 20 Fla., 235, the ruling of the Circuit Court in opening said final decree was reversed, and the case sent back to the court below. The merits of the case were not passed upon in the decisions, *supra.*

The case went back to Duval county, and the Chancellor, in conformity with the decision of this court in 20th Fla., vacated his said order opening the final decree prior thereto granted therein. From the judgment originally given and remaining after this order of the Chancellor, so vacating the order before made by him, the defendants appealed, and the cause was again here in Catherine S. Hart, executrix of the last will of Ossian B. Hart, deceased, Abel S. Baldwin, Paran Moody, Calvin L. Robinson, William P. Marvin, administrator *de bonis non* of the estate of H. H. Hovy, deceased, and Ozias Buddington, appellants, vs. Thomas E. Stribling and his wife, Mary E. Stribling, appellees, 21 Fla., 136.

It will be seen that when the case was here the second time (in 21 Fla.) the sureties upon the additional bonds of O. B. Hart, as guardian aforesaid, were still parties defendant to said suit, but the court held, when the cause was here the second time, that the sureties upon said additional bonds were not proper parties to said suit, and the cause was reversed upon this ground, and again sent back to the court below, and certain amendments to the pleadings

## JUNE TERM, 1889. 445

Hart, Ex., et als., vs. Stribling et ux.—Opinion of Court.

were then made, which opened the final decree first granted therein, which allowed the defendants to make their defence upon the merits of the cause, which they did make, and the cause is now before this court the third time—this time upon its merits.

Counsel for appellees contend that the cause was settled upon the law and upon its merits, by the decision in 20 Fla., *supra*, and, if they are correct in this, we have nothing to do but to affirm the proceedings of the court below, because it is well settled that whatever has been decided upon appeal cannot be re-examined on a subsequent appeal brought in the same case by the same parties. Wilson, executrix, *et al.*, vs. Fridenburg, 21 Fla., 398; Clark vs. Keith, 106 U. S. 464; 94 U. S. 498; 17 Wall., 283; 12 Wall., 129; 116 U. S. 567, and numerous other authorities.

But was the law of this case settled in 20 Fla.?

Under the statute (McClellan's Dig., p. 345, sec. 21,) it is provided that "the judges of the Supreme Court of this State shall, in deciding cases, prepare and make a syllabus or statement, of the points and principles intended to be decided by the court, which shall be published in the reports in lieu of that usually prepared by the reporter."

Upon examining the syllabus in Stribling and wife vs. Hart *et al.*, in 20 Fla., it will be seen that the syllabus refers exclusively to questions of practice, and does not touch the merits of the case, and this shows that the court did not intend to pass upon and settle the case upon the law and the merits thereof. But suppose we are mistaken in this, and suppose that the court did intend to decide the case upon its merits as well as upon the questions of practice, this does not change the conclusion that the court did not, and could not, decide the case upon its merits, because the merits of the cause were not then before the court.

The only reasonable conclusion that can be arrived at in

regard to the decision in 20 Fla. is that the opinion there expressed upon the merits of the cause was the mere *dictum* of the Justice rendering the decision. The *dictum* of a Judge is not the decision of a court.

"There is nothing authoritative in a case, except what is required to be decided to make the final judgment, and that by the judgment becomes *res adjudicata* between the parties as to the subject matter of the suit." Love vs. Miller, 35 Ind., 294; (21 Am. R., 196;) see also Roahrbach vs. Germania Fire Ins. Co., 62 N. Y., 47, citing 4 Burr., 2064, 2068, and Rouse vs. Moore, 18 John. R., 407, 419.

An *obiter dictum*, in the language of the law, is a gratuitous opinion, an individual impertenance, which, whether it be wise or foolish, right or wrong, bindeth none, not even the lips that utter it. Old Judge, taken from the title page of a work on *obiter dicta* published by John D. Allen, New York, 1885.

These authorities completely overthrow the contention of appellees' counsel that the merits of this cause were settled by the decision in 20 Fla.

After the case had been reversed the second time, and after the amendments to the pleadings as aforesaid, the defendants answered, and set up an alleged settlement between O. B. Hart, guardian, and his ward, dated June 4th, 1872, and that upon said settlement it was found that the balance due from the guardian to his ward was $3,646, and that he gave the ward his promissory note for $3,000, due at 12 months with 12 per cent. interest per annum. (As to why the note was not given for the full amount of the balance so found to be due the ward is not shown, but we infer from proceedings and settlements shown in the record that the residue was claimed by the guardian for board for his said ward.) That the estate of O. B. Hart was found to be insolvent. That the ward held the note so given her by her guardian

for .nore than eight years before bringing this suit. That Mrs. Stribling presented the said note to the executrix, Mrs. Hart, as a claim against the insolvent estate of O. B. Hart ; and also sets up Mrs. Stribling's satisfaction and confirmation of the settlement with her guardian, and her long acquiescence and positive acts to show that she considered said settlement with her guardian as binding and final, at least as to the sureties, Baldwin and Moody.

The answers were excepted to on several grounds but the exceptions were overruled.

The testimony was taken and the Chancellor decided that the complainants were entitled to the relief prayed for, but counsel for appellants say that the Chancellor remarked at the time that he had not changed his opinion, but the Supreme Court had taken a different view of the case ; and they further contend that the Chancellor was influenced in his decision by the " *obiter dicta* " of Judge Westcott before referred to in 20 Fla.

R. M. Call, Esq., was appointed referee to take testimony, an accounting, &c. By the final accounting the referee found that on the 2d day of June, 1872, (two days before the note was given) the guardian owed his ward $2,905, which, with interest upon annual rests, amounted to $8,137.40, and on October 11th, 1886, complainants having remitted all amounts due them in excess of the sum of $8,000, (amount of the penalty of guardian's original bond), it was decreed that they recover of the defendants the sum of $8,000 and costs ; and defendants appealed.

The bill alleges no fraud on the part of the guardian at any time, and in the absence of such allegation, and in view of the fact that at the time of said settlement between the guardian and ward, the ward was legally capable to contract and be contracted with, and in view of the further fact that the note given, by its terms, extended the time in

which the money was to be paid, the sureties upon the guardian's bond were, by such extension, released from said bond. Fellows vs. Prentiss, 3 Denio, 512; Bangs vs. Strong, 7 Hill, 250; Rathbone vs. Warner, 10 John., 587; Bangs vs. Masher, 23 Bar., 478; 6 Duer, 294; Huffman vs. Hurlbert, 13 Wend., 312; Gahn vs. Neimcewiez, 11 Wend., 312.

By the setttlement between the guardian and ward the sureties were deprived of an opportunity of obtaining indemnity by reason of rendering it unnecessary, and perhaps impossible, for them to take any steps to secure themselves, for how could they require Hart, the guardian, to account, when the only one to whom they were accountable had voluntarily released him by extending the time in which to pay the money then due?

The ward, after attaining her majority, instead of requiring the guardian to pay the money due her, settled with him by taking his note and extended the time for payment, without the knowledge or consent of the sureties, and in so doing she released the sureties and relied upon the note for payment instead of relying upon the bond. That the ward had the right to make such sett.ement, and that the settlement is binding, unless it is shown that the guardian obtained it through fraud or undue influence, is a proposition that cannot be doubted; and the ward having acquiesced in such settlement for more than *eight* years, certainly justice does not now demand that the sureties shall be made to pay that which she lost by said settlement, whether it were wise or not.

A release to a guardian by his ward after coming of age, with full knowledge of the facts, and in the absence of any undue means used on the part of the guardian to obtain it, is binding. Kirby vs. Taylor, 6 John., Ch. 242; Brewer vs. Vanarsdale, 6 Dana, (Ky.,) 204; 3 Wait's Ac. and Def., 570.

Now there is nothing in this case to show that there was

any fraud or undue influence on the part of the guardian to induce his ward to enter into said settlement, nor is there anything to show that the settlement was not in the ward's interest, had she taken the proper legal steps to collect the note when it fell due. The note was given in 1872, fell due in 1873, and the guardian did not die till 1874, and there is nothing to show that the ward could not have made the money on the note in the meantime. The ward in her testimony says that there was never any account rendered her by her guardian, showing what had become of her money, and that the guardian did not make any statement to her at the time he gave her the note, that it represented the balance due her. That she supposed her guardian gave her the note for $3,000, for the old note which was for $3,600, the guardian claiming certain charges for board for the ward to offset the $600. That she was in the office of her guardian a great deal, and that the note was given in the office; that she never asked him for a settlement. That she knew nothing of the settlement of his accounts, and that she lived with him to the time of his death. This testimony may all be true, but it must be remembered that it was given many years after the death of the guardian, and that the guardian was the only person who could at any time have explained or contradicted such testimony. Such testimony should be looked upon with suspicion, and especially is this true when the testimony is considered in connection with the acts of the ward, in regard to the settlement, both before and after the death of the guardian.

In the case of Hoffman vs. Hurlburt, *supra*, it is held that if the extension of the time for the payment of a bond is without consideration, the sureties are not released, and this is in conformity with the current of authorities on the subject, but that doctrine is not applicable to the case at bar, for the reason that in this case the ward took the guar-

dian's note due at twelve months with 12 *per cent. interest per annum*, which makes the consideration for the extension of time plainly apparent.

But appellees contend that indulgence by complainants did not discharge the sureties from their liability on the guardian's bond, citing Dorman vs. Bigelow, 1 Fla., 281; Mitchell vs. Cotten, 3 Fla., 134; Pfeiffer & Sullivan vs. Knapp, 17 Ibid, 144; Newel vs. Hamer, 4 Howard, 684; Leading Cases in Equity, part 2, Vol. 2, 1000.

The doctrine laid down in the first case cited, *supra*, does not apply to this case. In the next case, (Mitchell vs. Cotten) the court say: "Concealment by a creditor from a surety of material facts, by which the surety may be injured, or his rights affected, will invalidate the contract as to him, and discharge him from all liability. But the contract between the principal parties, of which a surety without privity, can avail himself for his discharge, on the ground of concealment, must be a valid contract as between the principals; and the act or transaction of which the surety seeks to avail himself for his discharge must be such as lessens the ability of the principal to comply with his contract, or alters the rights of the parties, or enlarges the demand to the prejudice of the surety.

This authority does not sustain the position assumed by the appellees, because in the case before us there is nothing to show that the settlement between the ward and guardian by which time was extended to the guardian to settle his indebtedness to the ward, was known to the sureties; on the contrary, the natural inference is, that the extension of time was only known by the parties to that transaction, and if so, it will certainly not be contended that facts material to the sureties' interests were not kept from them, and if such material facts were kept from them, the decision in Mitchell vs. Cotten certainly is not in conformity with appellees' propo-

JUNE TERM, 1889.　　　451

Hart, Ex., et als., vs. Stribling et ux.—Opinion of Court.

sition. Certainly the rights of the parties upon the guardian's bond were "altered" by such extension of time for payment from the ward to her guardian, and under the decision in Mitchell vs. Cotten, the sureties were thereby discharged from the bond. In the next case, Pfeiffer & Sullivad vs. Knapp, the court held: "The short delay to institute suit in this case does not relieve the surety even upon a simple contract of suretyship independent of express conditions, such as stated in this bond ; mere indulgence at the will of the creditor extended to the debtor in no way discharges the obligations of the surety. It is a settled rule that there must be a valid common law agreement to give time, founded, of course, on a good consideration, to have this effect " (Citing 5 How., 207; 3 Ran., 328; 1 Leigh, 435; 12 Wheat., 554 ; 44 Ind., 67).

Now the difference between the case of Pfeiffer & Sullivan vs. Knapp and this is, that in the former there was a mere indulgence in a short extention of time to the debtor, without any consideration, and it in no manner " altered " the relations of the parties to the bond, but in the case at bar, there was a consideration, and the rights of the sureties to the bond were effected by such extension of time.

The court plainly intimate in their decision that where there is a valid agreement for a valuable consideration, for the extension of time to the principal, it will discharge the surety.

In the case of Newell vs. Hamer, 4 How., (Miss.,) it is held that a voluntary postponement of an execution on a forthcoming bond by the creditor at the suggestion of the principal debtor, does not discharge the surety, when there is no consideration for the indulgence, nor binding agreement to delay the execution of the judgment until a particular period. There must be a positive and binding agreement, based upon a valuable consideration, sufficient to tie

up and restrain the creditor during the time for which the indulgence is given or it will not be a fraud upon the rights of the surety, nor discharge him from liability.   This case clearly does not sustain the position assumed by appellees.

Appellees also cite the case of J. D. Gilleth vs. John E. Wiley, Vol. 15, Western Reporter, 171, and seems to rely upon it with much confidence for an affirmance of this case. In that case the guardian obtained the receipt of his ward for a large sum of money, and the court say : " The complainant's receipt filed by the guardian is *prima facie* evidence that his guardian on or before July 1, 1869, paid him the sum of $2,677, but is not conclusive.   Like any other receipt it is open to explanation or contradiction.   (Citing Scott vs. Bennett, 8 Ill., 245 ; Walrath vs. Norton, 10 Ill., 437 ; Frink vs. Balton, 15 Ill., 343).

" The evidence clearly establishes that the receipt is not true and that the guardian never in fact paid the complainant said sum of money or any part of it, and that there had at no time been a settlement between the guardian and ward."

Thus it is seen that the receipt in the case *supra* was obtained through fraud, and it follows of course that the ward was not bound by it—differing from the case at bar in that no fraud is shown in this.

Now we have most carefully examined this whole case, and all the authorities to which we have had access bearing upon it, and after doing so we are of the opinion that the ward by said settlement with her guardian, and in taking his note and extending time to him in which to pay money then actually due, relied upon the note for payment of such indebtedness in lieu of the bond, and thereby released the sureties.

The decree is reversed, and the cause remanded with directions that the bill, as to the sureties, be dismissed, and

for such further proceedings as to the executrix, as may be proper and not inconsistent with this opinion.

### ON PETITION FOR REHEARING.

When a question presented by petition for rehearing has been considered and adjudicated by the court, there is no such omission or mistake as furnishes ground for a rehearing ; and in this case the question of the liability of certain sureties being held not to have been determined on a former appeal in such way as to settle the question as the law of the case, a rehearing will not be granted on the ground of alleged error in the decision of that point.

MAXWELL, J. : When this case was under consideration, we had fully before us the previous action of this court on former appeals, and one of the questions to be determined was whether we were precluded by the decision in the first appeal from considering the point as to the liability of the sureties, in favor of whom the bill had been dismissed by the Circuit Court. The petition for rehearing calls attention to the fact that the question of the release of the sureties was before the court by the assignment of errors, and was argued by counsel, in that appeal, and submits that the decision then given, holding the sureties liable, "is not *dicta*, but the law of the case."

It will be seen from the opinion in the present case that we did not fail to consider the question, whether that decision, so far as it related to the liability of the sureties, was intended to be conclusive on that point, and that we held it was not. There was, therefore, no such omission or mistake as furnishes proper ground for a rehearing.

In addition to reasons given in the original opinion, it may be observed that the court in the first appeal dealt with the question of the liability of the sureties not so much upon the substantive merits of the question as upon its relation

to the main matter of the decision, which was that the decree *pro confesso* had been improperly set aside. Having held that no good cause for setting it aside had been shown, the court, to strengthen the conclusion, says "nor do we think that the case is one of such hardships as to imperatively demand a favorable exercise of the discretion," (20 Fla., 235,) and then, to show why, proceeds to a brief examination of the question of liability. It is to be observed further that on the second appeal, the same Justice delivering the opinion, the court directed that the bill as to the obligators in the bond should be dismissed "unless by amendments a case of primary liability on their part is made, to which new case they will have a right to make defence." 21 Fla., 136. Amendment was made, and answers filed, and proceedings had which resulted in the decree brought here for review. That was the "new case" authorized. This would not have been done if the court had thought the liability of the sureties had been already finally determined.

We have said this much in support of our conclusion in the original opinion, because we wish it understood that, while we fully recognize the rule that a question once finally decided in a case is thereby settled as the law of that case, we do not think the rule has been disregarded by us in this case.