State v. Solon.

---

THE STATE v. GEORGE F. SOLON, Appellant.

Division Two, February 19, 1913.

1. **RE-OPENING STATE'S CASE: After Demurrer.** The trial court did not abuse its discretion in permitting the State, after a demurrer to the evidence was offered and before it was argued or any order was made in regard to it, to re-open the case and re-call a witness for further examination in chief.

2. **INSTRUCTIONS: Two Counts: For Conviction Under Both: Acquittal Under One.** Where there were two counts in the information concerning the same criminal transaction, and no election was asked or required, instructions which authorized the jury to convict under both were not prejudicial, if the jury acquitted under one count.

3. **GAMING TABLE AND GAMBLING DEVICE: Upon Which Cards Were Used: Poker: No Proof of Cards.** In the absence of a showing that the game of poker was played with cards, the court will not take judicial notice that poker is a game of

chance.  So that where the information charged that defendant set up and kept "a certain gaming table and gambling device, to-wit, a round table covered with cloth, upon which cards were used," and there is no evidence that the game of poker alleged to have been played on the table was played with cards, or that chips or other gambling paraphernalia were used, a demurrer to the evidence should be sustained, since it is not sufficient to show that a game of poker was played upon an ordinary hotel dining table and that defendant acted as "banker" in said game and actually took a "rake-off" therefrom.

4. ———: ———: **Necessary Showing.**  In order to sustain a conviction under the second count of an information charging that defendant set up and kept "a certain gaming table and gambling device, to-wit, a round table covered with cloth, upon which dice and cards were used," where there was an acquittal under the first count which charged that the gaming table was "one crap table, commonly so called, upon which table dice were used," the proof must show substantially: 1, that a table or other such appliance was set up, kept or furnished; 2, that cards, commonly called playing cards, were kept or furnished and used in playing games of chance; 3, that money or property was bet on card games played on or with those appliances, either by players against each other or by players against the keeper or master, or by players on the side of the keeper or master; 4, that persons were enticed, induced or permitted to play such games on and with said devices; and, 5, that defendant had at the time under inquiry the care or management, or acted as master in charge, of such paraphernalia.  And in view of an acquittal under the first count, charging a crap table and the use of dice, a conviction under the second count cannot stand without a substantial showing that cards were used, although the evidence tends to show that dice were used or "shot" and money was placed on the game.

Appeal from Monroe Circuit Court.—*Hon. William T. Ragland,* Judge.

REVERSED AND REMANDED.

*J. H. Whitecotton* and *J. W. Wight, Jr.,* for appellant.

(1) The court abused the discretion the law gives it in permitting respondent to re-open the case after the demurrer had been filed challenging the sufficiency

of the evidence. (2) There is no evidence to support the verdict and the peremptory instructions asked at the close of the case in chief should have been given. The table, as shown by the testimony in the case, is not a gambling device within the meaning of Sec. 475, R. S. 1909. State v. Etchman, 184 Mo. 193; State v. Mathis, 206 Mo. 604. (3) The demurrer should have been sustained, because there is absolutely no proof that the defendant in any way "set up and kept a certain gaming table and gambling device" as alleged in the indictment. The proof by the State shows that the table was a "round dining table, five feet in diameter, covered with cloth," and with the other furniture in the room was similar to the furniture in the other rooms of the hotel. The evidence for the State clearly shows that this room and all the furniture and fixtures therein was the property of Mrs. Solon, the defendant's mother. The table within the meaning of the law was not "kept" by the appellant. (4) The court erred in refusing to give the instructions asked for by the defendant at the close of the State's case and also at the close of all the testimony in the case and directing a verdict then and there in favor of the defendant. This instruction tested the sufficiency of the State's evidence and it being short of the requirements of the law, the same should have been given.

*Elliott W. Major*, Attorney-General, and *John M. Dawson*, Assistant Attorney-General, for the State.

(1) Where there is substantial evidence in the record to support the verdict, this court will not interfere—that is to say, this court will not convert itself into the triers of the fact, nor will this court undertake to weigh the evidence and settle the conflict that may appear therein. State v. Tetrick, 199 Mo. 104. (2) The instructions are in approved form and correctly state the law under the evidence in the cause. State

v. Hall, 228 Mo. 456; State v. Mathis, 206 Mo. 610;
State v. Etchman, 184 Mo. 193; State v. Lockett, 188
Mo. 418; State v. Rosenblatt, 185 Mo. 114.

FARIS, J.—Prosecution under section 4750, Re-
vised Statutes 1909, which comes up upon an appeal
by defendant from the circuit court of Monroe county.
The information is in two counts, the first of which
charges defendant with setting up and keep-
**Information.** ing a certain gaming table, and gambling
device, to-wit, "one *crap* table, commonly so called,
upon which table dice were used." But since defend-
ant was acquitted upon this count it need not be fur-
ther referred to herein. The second count, omitting
formal parts and caption, is as follows:

"And Ezra T. Fuller, prosecuting attorney of and
within and for the county and State aforesaid, upon
his official oath aforesaid further informs the court
that at and in the county of Monroe and State of Mis-
souri, on or about the 9th day of December (A. D.
1911, and on divers other days prior thereto), George
F. Solon did then and there unlawfully and feloniously
set up and keep a certain gaming table and gambling
devices, to-wit: A round table covered with cloth, upon
which dice and cards were used, which gaming table
and gambling devices were adapted, devised and de-
signed for the purpose of playing games of chance for
money and property, and did then and there unlaw-
fully and feloniously induce, entice and permit Edgar
W. Guilford, Edward Crawford and other persons
whose names are to this prosecuting attorney un-
known, to be and play at and upon and by means of
said gambling table and gambling devices, contrary
to the form of the statute in such cases made and pro-
vided and against the peace and dignity of the State."

Upon a trial had at the March term, 1912, of the
said Monroe Circuit Court defendant was found guilty
by a jury on the second count and his punishment as-

sessed at imprisonment in the county jail for a term of six months. From this conviction, defendant, after filing motions for a new trial and in arrest, prosecutes this appeal.

The facts as developed by the testimony seem fairly to be about as follows:

The defendant, a young man, of about the age of twenty years, is a son of a Mrs. Solon, who at the times complained of, was the keeper of a certain hotel in Monroe City, known as the Monroe Hotel. The build-

**Facts.**    ing in which said hotel was operated seems to have had three stories; the second and third of which, only, were used for hotel purposes. The defendant seems to have been acting for his mother as hotel clerk. As such clerk, during all the times mentioned in the testimony, defendant, when on duty, had charge of all of the guest rooms in this·hotel.

It will be noted that the information charges the offense to have been committed on about the 9th of December, 1911. It is in evidence that on the 9th day of December, 1911, one Dr. Guilford having occasion to see a Mr. Crawford, also a witness in the case, went to the Monroe·Hotel, and ascertained that Crawford was in a certain room of the hotel. Guilford describes his meanderings in seeking Crawford as follows: "We went up a flight of steps to the hotel office; up another flight of stairs to the third floor; back through a hall-way—the back portion of which was dark—through a dark room into another room, and in the northeast corner of the third story in the rear of the building." There the witness saw the defendant with two other young men engaged in playing with dice for money. Two dice appear to have been used. Dice were being "shot" upon a table described by the witness as a "round dining-room table covered with cloth and about five feet in diameter." The witness Guilford, after observing the game for a time, was asked by defendant to join therein, and ultimately did so. Being asked

what the defendant was doing there at the time, witness Guilford replied: "He did just the same as the rest of the others, shot dice and put up his money on the game." Some considerable money seems to have been bet by defendant and the other three persons in this game, which continued until some sort of a difficulty arose between the defendant and the witness Guilford which resulted in the game for the time being broken up.

Another witness Crawford, who seems to have been present at all the times complained of by the State in both counts of the information, testifying for the State touching the charges contained in each count, says: "Dr. Guilford came up and sat on the bed; sat there probably two or three minutes, something like that; I think I had the dice in my hand at the time; I lost out, as we call it, and doctor took the dice and shot four or five rolls, and what we call craps; he threw craps each time I think. The defendant won in those games; I don't have any recollection of the defendant making any charges or taking anything for the 'shots' from those who participated in the game. I have no recollection of him making any charges on shots. I have been in that room other than on December 9, 1911; we played back in that room on that table with the defendant; he was, what we term, *banking the game*; taking a 'take-off.'"

After offering the testimony of other witnesses, which testimony had reference largely to the location of the hotel, the rooms thereof and other matters not pertinent to this inquiry, the State announced that it rested. Thereupon the defendant filed a demurrer to the evidence in the form of an instruction to be given by the court to the jury that under the law and the evidence their finding on the second count of the information should be for the defendant. Before any action was taken by the court on this demurrer the State announced that it desired to withdraw its an-

State v. Solon.

nouncement of rest and recall witness Crawford. This the court permitted the prosecuting attorney to do, adding, as the record shows, that this action was taken "before any point was made or presentation of the matter," except, as appears by inference, the mere filing of the demurrer.

Upon being recalled the witness Crawford again testified in substance as follows: "Q. Ask you whether you were ever invited to this room in question? A. I would not consider it a particular invitation, just in a way; defendant said he had 'a little game up there once in a while, if I ever done the like come around,' something to that effect. By 'up there' he had reference to up in the hotel. I believe I have played poker twice in that room in that hotel. Defendant was there each time; he was playing poker; he made change and took the take-off; this was sometime in December, 1911. I don't remember the first time I went to this room; it has been so long I could not recall who was there."

The above is the substance of the testimony for the State so far as the facts are pertinent to this prosecution, and so far as they refer to the acts done by the defendant.

Defendant did not testify in his own behalf and called but one witness, his mother, whose testimony, in the view we take of this case, is not pertinent, except the fact of defendant's age, which it seems to be conceded, was twenty years.

At the close of all the testimony defendant requested an instruction in the nature of a demurrer to the second count of the information. This request was refused, and the defendant properly saved his exceptions.

As stated heretofore, the jury acquitted the defendant on the first count and found him guilty on the second count of the information.

Many objections and complaints are made by learned counsel for defendant in his brief and in his assignment of errors therein.

I. Among other things, it is complained that the court erred in permitting the State, after having announced that it rested, to re-open the case and re-call for further examination the witness Crawford. We cannot agree with this contention. This was a matter resting in the sound discretion of the trial judge. He does not seem to have abused that discretion. Since the record shows that immediately after the announcement that the State had rested, although a demurrer to the count of the information under consideration was offered, yet no action had been taken by the court thereon; that the matter had not been presented by argument and that no orders touching the same were made. Taking the whole case it cannot be seen wherein defendant was prejudiced, and this point is ruled against the defendant.

*Reopening Case.*

II. The contention is made that the instructions given by the court were bad, but we are not furnished with any specifications showing wherein the same are defective, and a careful reading of them does not disclose any defect for which this case should be reversed. It will be noted that the objections to these are leveled at the substance of the instructions and not the failure of the court to give other instructions, to which his attention was not called by counsel. It is true that something is said to the effect that the instructions given by the court authorized a conviction of defendant upon both counts of the information, and it is complained that this is error. The court might well have required the prosecuting attorney to elect, or failing in this should have given an instruction in substance that they might find him

*Instructions.*

guilty or might acquit him on either count, according as they might find the facts, but that if they found him guilty upon the first count they should acquit upon the second and *vice versa*. If defendant had been convicted upon both counts the failure of the court to require an election (if one had been asked, as it was not), or the failure of the court to instruct the jury that they should convict upon one count only, as they might see the facts, and acquit upon the other, would have been reversible error (State v. Carrigan, 210 Mo. 351); but since the defendant was not convicted on the first count, but acquitted thereon and convicted only upon the second count, it cannot be seen how he was hurt by the doing of the jury without instructions of the very thing that he desired them to do with the aid of instructions. This point then must be ruled against defendant. [State v. Cannon, 232 Mo. l. c. 212.]

III. Complaint is made by counsel for defendant in effect that there was not sufficient testimony to go to the jury on the second count of the information. It will be borne in mind that defendant Sufficiency of was acquitted on the first count and con-Testimony. victed on the second count. A timely demurrer to the evidence was offered as to the second count at the close of the State's case and again renewed at the close of the whole case by an instruction requested, in the nature of a demurrer. Both of these requests were refused by the court and proper exceptions taken by the defendant.

This point presents a serious question for consideration. The prosecution is under what is now section 4750, Revised Statutes 1909, a section which, first passed in 1825, has undergone many vicissitudes both by amendment and by construction. In considering this point of complaint it must be kept in mind that defendant stands convicted here of setting up and

keeping "a certain gaming table and gambling device, to-wit, a round table covered with cloth, upon which dice and cards were used." Upon the charge in the first count of keeping "one *crap* table, commonly so-called, upon which table dice were used," he was acquitted. So this first count and the questions involved therein are not before us. The jury, by its verdict, plainly took the view that he had not set up or kept a craps table within the meaning of the statute. Then the question is, *had he set up a gaming table upon which cards were used so* as to render him amenable to the denunciation of the statute?

We have looked in vain in the record for some testimony that the game of poker alleged to have been played upon the table in question, was played with cards. The proof simply shows that "a round dining table, covered with cloth, five feet in diameter and similar in all respects to many other tables used in this hotel," constituted the plane surface upon which the game of poker was played. No chips or other paraphernalia, no cards even (*though the information alleges the use of cards as an adjunct to the table*) were offered in evidence physically, or orally shown by the evidence, to have been used in playing the game of poker. Beyond the fact that an ordinary table was used and that on one occasion defendant took a "rake-off" and "made change and acted as 'banker,' " no facts are shown to bring defendant within the denunciation of the statute. The information charges the use of cards on the table mentioned therein. Having so charged, some proof ought to have been adduced, either orally or by offering the cards themselves in evidence, that cards were used on the table in playing the game of poker from which the defendant took the "rake-off" in the game of which he was banker. But there is not one word of proof as to the use of common playing cards or any other cards on this ta-

ble.   In the absence of a showing that the game of
poker was played with cards, we will not take judi-
cial knowledge that poker is a game of chance.   [In
re Murphy, 128 Cal. 29; State v. Russell, 17 Mo. App.
16.]

It follows then, that the demurrer to the evidence
on the second count ought to have been sustained, since
to be clear upon the point, we hold that it is not suffi-
cient in a prosecution under this section to show that a
game of poker was played upon an ordinary dining ta-
ble, and that the defendant (though a clerk in the hotel
in which the room was situate wherein the game was
played) acted as banker in said game and actually
took a "rake-off" therefrom.   There should have been
a showing as to the use of other paraphernalia; *cer-
tainly to the extent charged in the information* in or-
der to bring defendant within the purview of the sec-
tion under consideration.

We are not inclined, the history and patent origi-
nal intent of this section being kept in mind, to any
further invade the "twilight zone" separating the
facts in the case at bar from an ordinary case of gamb-
ling.   All of the cases wherein convictions for setting
up and keeping poker tables have been sustained, were
cases in which the proof showed that playing cards
and poker chips were used, and usually that some spe-
cially prepared table (e. g., one having a canvas top,
or having a slot leading into a box, called in the slang
of the witnesses, a "kitty") was a part of the para-
phernalia, and that the acts involved continuity over
some period of time beyond one single isolated act.
[State v. Cannon, 232 Mo. 205; State v. Hall, 228 Mo.
456; State v. Mathis, 206 Mo. 604.]

We are not holding that a prosecution under this
section as it now reads cannot be maintained for set-
ting up and keeping the appliances and parapherna-
lia with which games of chance with cards can be

**Things That Must Be Shown.** played. But in order to sustain a conviction in such case the proof ought to show substantially (a) that a table or other such appliance was set up, kept or furnished; (b) that cards, commonly called playing cards, were kept or furnished and used in playing games of chance; (c) that money or property was bet on card games played on and with the above appliances, either by players against each other or by players against the keeper or setterup, or by players on the side of the keeper or setterup; (d) persons must have been shown to have been enticed, induced or permitted to play such games on and with the devices aforesaid; and (e) defendant must be shown to have had at the time under inquiry the care or management, or to have been acting as master in charge of such paraphernalia. Present the other requisites of evidence, it can be seen that selling chips or tokens to be used in the game played on and with such appliances, or taking a "rake-off" or per cent, on the games played, might be cogent evidence of care or mastery. So far the adjudicated cases, wherein poker tables constituted the devices complained of, seem to go, and no further. In the substantial absence of any of these elements, a conviction under this section should not be permitted to stand.

Clearly this section has been by construction strained almost to the breaking point. Passed originally in 1825, it denounced the use of gambling wheels and gaming tables and devices mechanically constructed—devices more intricate and perhaps even more unfair than a mere table or plane surface equipped with a pack of playing cards or a pair of dice. It has been twice amended by adding other appliances to those prohibited. In 1865 the word "keno" was added to it, and again in 1901 the words *"slot machine, stand or device of whatever pattern, kind or make, however worked, operated or manipulated,"*

were added to this section. [Laws 1901, p. 130.]
Prior to the last amendment, and in 1881, it was made
a felony. [Laws 1881, p. 112.] Certainly it cannot
be said that the addition in 1901 of these other me-
chanical devices and appliances used for gambling
had any (the least) effect to turn the intent of the
statute toward the homely dining table and pack of
cards. Rather from the nature of the added gamb-
ling devices it would seem that the legislative mind
has been steadfast.

It follows then that this demurrer to the evidence
on the second count of the information should have
been sustained.

IV. Instruction numbered 3 given by the court
of its own motion is complained of. This instruction
is as follows:

"The court further instructs the jury that before
you can find the defendant guilty under either count
in the information, you must find and believe from
the evidence in the case beyond a reasonable doubt
that the defendant set up and kept a gaming table
of the kind and character as defined and explained in
instructions one and two herein, but you are further
instructed that under the law every person appearing
or acting as master or mistress or having the care,
use or management, for the time, of a gaming table
or gambling device is deemed a keeper thereof."

Learned counsel for defendant contend that this
instruction is erroneous in that it does not use the
word "prohibited," for the reason, as they urge, that
section 4761, Revised Statutes 1909 (which section
deals with the matter of proof), refers to
the gambling devices denounced by section
4750 as the gaming table, bank or device
prohibited by that section, and because section 4761
uses the word "prohibited" counsel insist that the
word ought to have been used by the court in this in-
struction. Even a casual reading of this instruction

Instruction
Sufficient.

will show that it refers to other instructions ·given in the case, which other instructions define the kind of gambling device alleged to have been used; for the instruction requires the jury to find "that the defendant set up and kept a gaming table of the kind and character as defined and explained in instructions one and two herein."

It follows from what has been said that this case must be reversed for the reason that under the law there was not sufficient testimony to go to the jury on the second count. It may be said in passing that unless the testimony can be made stronger in another trial than in the case at bar no necessity is seen for continuing the prosecution. Aside from the error noted, for which we reverse the case, and the failure of the court to instruct that a conviction could not be had on both counts, the case was well and ably tried. Objection is made to the rulings of the court on the introduction of testimony. The case is singularly free from facts warranting this criticism.

. Reversed and remanded. *Brown, P. J.,* and *Walker, J.,* concur.