## THE STATE v. RICHARD WADE, Appellant.

In Banc, March 1, 1916.

1. INFORMATION: Sufficiency of Charge. In criminal pleadings nothing material can be left to intendment or implication; and where a crime is created by statute the charge must be such as to specifically bring the accused within its material words.

2. ————: ————: Aided By Proof. The State cannot prove what it has not charged; it cannot by incompetent evidence supply an absent allegation. Even though the evidence establishes an offense forbidden by the statute, a conviction cannot stand if the allegations are insufficient to point out any crime denounced by it.

3. ———: Ejusdem Generis: Gambling Device. When an enumeration of certain specified things in a statute is followed by general words or phrases, they are deemed to mean things of the same class and kind as those enumerated, and do not include things wholly different from those specifically mentioned. Section 4750, Revised Statutes 1909, condemning the setting up and keeping of certain enumerated gambling devices, or "any kind of gambling table or gambling device, adapted, devised, and designed for the purpose of playing any game of chance for money," is not broad enough to include all gambling devices regardless of their character, but does include all those of a kindred nature and similar kind to those enumerated.

4. ———: ———: ———: Craps Table: Must Be Described. A table, duly marked and arranged for the purpose, on which the game of craps is played by means of dice for money or property, is within the purview of the statute; but it is not specifically enumerated therein, and therefore the rule of *ejusdem generis* applies, and the information must contain sufficient averments showing it to belong to the enumerated class. An information simply charging that the defendant set up and kept "a certain table and gambling device commonly called a crap table," with no allegation defining a crap table, or of what it consists, or how designed, or how and by what means the game of craps is played, is not sufficient to support a conviction, even though the evidence establishes the fact that the tables which were operated by defendant are of the class forbidden by the statute. Nor is the general allegation that the crap table was "a gambling device adapted, devised and designed for the purpose of playing games of chance for money and property" sufficiently descriptive of a crap table to supply an allegation necessary to show that such table is of a kindred nature and similar kind to one of those enumerated in the statute. [Overruling on this point State v. Rosenblatt, 185 Mo. 114; State, v. Locket, 188 Mo. 415; State v. Holden, 203 Mo. 581; State v. Lee, 228 Mo. 480.]

5. GAMBLING DEVICE: Commonly Known: Proof: Variance. Where the information charges that the gambling table which defendant set up is one "commonly known as a crap table," the State must show that there is a table commonly so known, and that it was this particular kind of table that defendant set up and kept; and where all the witnesses testify that the tables which defendant maintained and operated were not of the kind which they commonly knew as crap tables, and that a crap table is of a radically different design and construction, a conviction cannot stand.

6. ———: Location: Street Number: Variance. The information charged that defendant set up a craps table "at 118½ North Fifth street." The evidence tended to prove that de-

fendant set up gambling tables in the basement of premises designated as 118 North Fifth street, the sole available entrance thereto being under a barber shop at said number, from which initial point a tunnel, equipped with a series of automatic doors, led to the room where the tables were; that the premises and entrance were commonly known as 118½ North Fifth street; that defendant's mail in accordance with his direction, was addressed to 118½ North Fifth Street; and that when arrested defendant gave that number as his address.

*Held*, by REVELLE, J., with whom FARIS and BLAIR, JJ., concur, that there is no fatal variance between the allegation and proof; that it was unnecessary to allege the exact location, since it did not relate to a constitutive part of the offense, and if a variance at all it is cured by Sec. 5114, R. S. 1909.

*Held*, by GRAVES, J., with whom WOODSON, C. J., concurs, that the variance is not cured by the statute, but is fatal to the judgment. WALKER and BOND, JJ., do not concur with either opinion.

Appeal from Buchanan Criminal Court.—*Hon. Thomas F. Ryan*, Judge.

REVERSED AND REMANDED.

*Kay G. Porter, Charles F. Strop* and *Eugene Silverman* for appellant.

(1) It is the inflexible rule in criminal pleadings that in all indictments or informations for felonies, nothing can be left to intendment or implication, and judged by this rule, the information in the present case is insufficient. The indictment nowhere alleges the nature of the game which was played; it is not alleged that the game of craps was played; it is not alleged that a game of chance was played, and fails to allege that any game was played for either money or property. As sustaining the general principles which should govern the present case, see State v. Keating, 202 Mo. 204, and many cases cited therein. State v. Evans, 128 Mo. 406; State v. Birks, 199 Mo. 271. (2) It is no answer to the above contention that the information follows the language of the statute. The

rule that an information is sufficient when it follows the language of the statute has no application excepting in the cases where the statute so far individuates the offence that the offender has proper notice from the adoption of the statutory forms what the offence he is to be tried for really is. In no other case is it sufficient to follow the words of the statute. It is no more allowable under a statutory charge to put the defendant on trial without specification of the offence than if would be on a common-law charge. Wharton's Criminal Pleading and Practice, sec. 220; Sherwood's Commentaries on Crim. Law of Missouri, 638; State v. Hayward, 83 Mo. 299; Ex parte See, 241 Mo. 295; State v. Kruger, 134 Mo. 274; State v. Thierauf, 167 Mo. 442. (3) Not only was there no allegation that the game of craps was played, but there is no allegation as to what constitutes the game of craps. The information should have alleged that the game of craps was a game played with dice. This court has recently held that it would not take judicial notice that poker was a game played with cards and chips; it follows and for like reason, that this court will not take judicial knowledge that craps was played with dice. State v. Solon, 247 Mo. 672. (4) There was a fatal variance between the information and proof offered. The information charged the defendant with setting up a table commonly called a crap table. The proof was that the table set up was an ordinary pool table. The uncontradicted testimony was that a crap table, commonly called, which is the allegation, was a certain distinctive kind of table and established for a specific purpose, whereas, the table described in evidence was a different kind of table, and not such a table as is ordinarily used for gaming purposes. (5) The accepted doctrine is that where the place is stated not as venue, but as a matter of local description, a variance between the description in the indictment and the evidence will be fatal. Applying this rule to the present case, there was a fatal variance.

The uncontradicted testimony was that the device complained of was located in the basement of the building known as 424 Francis street, a separate and distinct number, and a separate and distinct building, State v. Kelley, 29 Atl. (N. H.) 843; Withers v. State, 17 S. W. (Tex.) 725; Bernero v. Commonwealth, 116 S. W. (Ky.) 312; Greenwood v. People, 83 Pac. 646; Bryant v. State, 62 Ark. 460; Moore v. State, 12 Ohio, 390; State v. O'Neal, 124 N. W. 69; State v. Crogan, 8 Iowa, 523; McAllister v. State, 116 S. W. (Tex.) 583; Ball v. State, 26 Ind. 155; Clark v. Commonwealth, 16 B. Mon. (Ky.) 216; People v. Slater, 5 Hill, 401; Levy v. State, 42 So. (Miss.) 875; Johnson v. State, 58 S. E. 265; State v. Kelly, 132 N. W. (N. D.) 223. (6) If it be conceded, which we do not, that there was any evidence tending to show that the basement of the premises ordinarily known as 118 North Fifth street was known as 118½ North Fifth street, yet the great weight of the testimony and all of the credible testimony was to the effect that 118½ North Fifth referred to the second story, and undoubtedly the jury upon the testimony in the case, had room to find that 118½ was the second story, in which event there should have been an instruction to the jury to have further assisted the jury, to the effect that unless the offence was committed at 118½ North Fifth street, the defendant should be acquitted. State v. Conway, 241 Mo. 271; R. S. 1909, sec. 5231; State v. Nicholas, 222 Mo. 434; State v. Taylor, 118 Mo. 153; State v. Banks, 73 Mo. 592; State v. Palmer, 88 Mo. 568.

*John T. Barker*, Attorney-General, and *Lee B. Ewing*, Assistant Attorney-General, for respondent.

(1) The information herein is good. Sec. 4756, R. S. 1909; State v. Lee, 228 Mo. 480; State v. Holden, 203 Mo. 582; State v. Rosenblatt, 185 Mo. 120. (2) The instructions are in approved form and fully cover all the law of the case. State v. Lee, 228 Mo. 480;

State v. Mathis, 206 Mo. 604;  State v. Holden, 203 Mo. 584.

REVELLE, J.—On the 2nd day of March, 1914, the prosecuting attorney of Buchanan County filed in the criminal court of that county an information, which, omitting formal parts, is as follows:

"That at said county Richard Wade at 118½ North Fifth Street, in the city of St. Joseph . . . did then and there wilfully, unlawfully and feloniously set up and keep a certain table and gambling device commonly called a crap table, which said crap table was then and there and on said other days and times a gambling device adapted, devised and designed for the purpose of playing games of chance for money and property; and did then and there . . . unlawfully and feloniously induce, entice and permit certain persons, to-wit . . . . to bet and play at and upon a game played on and by means of such gambling device."

On this information defendant was tried and convicted, and his punishment assessed at four years' imprisonment in the penitentiary. The judgment was affirmed by Division Two, but, owing to the dissent of Faris, J., and upon defendant's application, the cause was transferred to Court In Banc.

The evidence adduced by the State tends to prove that defendant, as tenant, occupied and had under his exclusive control, the basement of the premises designated 118 North Fifth Street, in the city of St. Joseph. The particular basement room in which the alleged gambling device was set up and kept was under a restaurant fronting on Francis street, the sole available entrance thereto being under a barber shop at 118 North Fifth Street. From this initial point of entrance a tunnel or underground passageway led to the room in question. The tunnel was equipped with a series of doors, which closed automatically through the opera-

tion of certain convenient and ready devices. A system of electric signals had been duly installed in order to warn of the approach of undesirable persons. In the room, besides some other furniture and fixtures, were two pool tables, on each of which was chalked off what is referred to in the evidence as a "crap game lay-out." The evidence also discloses that in this room was a full equipment for pool tables, such as racks, balls and cues. The "crap game lay-out" is described as certain chalk marks with numbers thereon at different points.

On the 7th of February, 1914, when this room was raided by the officers, thirty or forty persons were found in the room, some of whom were engaged at the time in playing what is called the "game of craps," which is described as a game played with dice. At that time there was about $300 in money found on the tables. One table was in charge of and being operated by Frank Dorsal, and the other by William Garnett, both of whom were in the employ of defendant. Defendant was at the cigar counter in another part of the room.

A deputy sheriff, who had been a police officer for fourteen years, and two of defendant's employees, testified that the premises and the entrance thereto were commonly known as 118½ North Fifth Street. The evidence also discloses that defendant's mail, and that of his employees, in accordance with his directions, was addressed to 118½ North Fifth Street, and, when arrested, defendant gave this number as his address.

The State's witnesses testified to their knowledge and familiarity with what is commonly known as a "crap table," and stated that the pool tables with the "crap lay-out" thereon were not such tables. All witnesses for the State testified, however, that the game of craps was, in point of fact, played on such tables.

The defendant offered some evidence tending to show that there was no such number as 118½ North

Fifth Street in the city of St. Joseph, and that if there were such a number it referred to the second story of the building at 118 North Fifth Street, and not to the basement in which defendant was conducting his business.

Defendant also offered a picture of a table which had been identified by the State's witnesses as a correct representation of the table commonly known as a "crap table," and this discloses no similarity between such a table and the one which the witnesses described as being kept by defendant.

I. The record discloses several assignments of error, the most important being the challenge to the sufficiency of the information. In the absence of a valid and sufficient charge a judgment cannot stand, and, under such circumstances, the question of a defendant's guilt or innocence is not food for the judicial mind. The organic law entitles every person charged with crime to be informed of the nature and cause of the accusation against him, and, in keeping with the spirit of this salutary and fundamental principle of justice, courts have evolved an inflexible rule that in criminal pleading nothing material can be left to intendment or implication. Where a crime is created by statute, the charge must be such as to specifically bring the accused within the material words thereof. One is not required to wait until the State's evidence is in to know whether he is *charged* with a crime. This much at least must appear from the allegations of the indictment or information—indeed, the State cannot prove what it has not properly alleged, and particularly can it not supply by incompetent evidence an absent allegation in the charge. We do not allow this even in civil pleading and practice, although, in such cases, we have not the same constitutional inhibition as we have in criminal cases.

The information in this cause is bottomed on section 4750, Revised Statutes 1909, which is as follows:

"Every person who shall set up or keep any table or gaming device commonly called A B C, faro bank, E O, roulette, equality, keno, slot machine, stand or device of whatever pattern, kind or make, or however worked, operated or manipulated, or any kind of gambling table or gambling device, adapted, devised and designed for the purpose of playing any game of chance for money or property and shall induce, entice or permit any person to bet or play at or upon any such gaming table or gambling device, or at or upon any game played or by means of such table or gambling device or on the side or against the keeper thereof, shall, on conviction," etc.

It will be observed that the Legislature first specifically names and denounces certain tables and gambling devices, thus giving them a legal signification, and then proceeds, in general terms, to level its pronouncement against "any kind of gambling table or gambling device adapted, devised and designed for the purpose of playing any game of chance for money or property and shall induce, entice or permit any person to bet or play at or upon any such gaming table or gambling device," etc.

In construing statutes we have so frequently applied the familiar rule of *ejusdem generis,* that we would not now be warranted in departing therefrom. We have said this doctrine meant that when an enumeration of certain specified things in a statute is followed by general words or phrases, such words or phrases of general description shall be deemed to mean things of the same class and kind, and not include things wholly different from those specifically mentioned, or otherwise expressed; that when general words follow particular words they must be construed as applicable only to the things of the same general

267 Mo. 17

class as the particular words by which they are preceded.

Although, as said by Judge FARIS in State v. Solon, 247 Mo. 672, when discussing the present section (l. c. 683), "Clearly this section has been by construction strained almost to the breaking point," nevertheless, this court has, at all times, declared, in determining the devices to which it is applicable, that it recognized the *ejusdem generis* rule.

In State v. Rosenblatt, 185 Mo. 114, Judge GANTT said: " 'Craps' are not named and therefore do not have a legal signification within the meaning of the statute, but if prohibited at all must come within the general prohibition of the section. Conceding that all other gambling tables and devices not specifically named must, under the doctrine *ejusdem generis,* be of the same general class with those devices specifically named, we think there can be no doubt that . . . a crap table is of that class."

In State v. Locket, 188 Mo. l. c. 422, Judge Fox, in passing upon the same question approvingly quotes this language from Judge GANTT.

In State v. Gilmore, 98 Mo. 206, this court held that a pack of playing cards, although used for playing games for money or property, was not a gambling device within the meaning of this section, the court tersely stating that any other construction is condemned by the rule of *ejusdem generis.*

In State v. Lemon, 46 Mo. 375, the statute was declared inapplicable to a horse race; and in State v. Bryant, 90 Mo. 534, it was held that a gun and a target were not of a kindred nature and similar kind to those enumerated, and were, therefore, not within the purview of the act.

In the recent case of State v. Solon, 247 Mo. 672, it was held that the court will not take judicial notice that poker is a game of chance, and that where there is no evidence that the game of poker alleged to

have been played on the table was played with cards and that chips or other gambling paraphernalia were used, a demurrer to the evidence should be sustained, since it is not sufficient to show that a game of poker was played upon an ordinary hotel dining table, and that defendant acted as "banker" therein and actually took a "rake-off" therefrom.

In State v. Patton, 255 Mo. l. c. 261, the court said: "In the case of State v. Solon, supra, we labored to show the elements which distinguish the felony of setting up a gambling device, from those which go to make up the ordinary misdemeanor of gaming. We often find a dangerous twilight zone where the facts so imperceptibly shade into a felony on the one side and into a misdemeanor on the other, that it is almost impossible to distinguish the line of demarcation. The Legislature has the right to say that a pack of cards carried by a traveler; a writing table, or a washstand in a guest room of an inn; an idle hour, an idle friend or two and a game of five-cent ante, make a crime meet for the taint of felony and two years in the penitentiary. But they have not so written it; neither will we."

From these cases it is clear that this statute is not broad enough to, and does not, include the setting up or keeping of every and all kinds of gambling devices, regardless of their character, but is leveled against only those of a certain class.

We yield to the holding in the case of State v. Rosenblatt, 185 Mo. 114; State v. Lee, 228 Mo. 480; State v. Holden, 203 Mo. 581; and State v. Locket, 188 Mo. 415, that a table, duly marked and arranged for the purpose, on which the game of craps is played by means of dice for money or property, is within the purview of the section.

We further find from the evidence in this case that the tables operated by defendant are of the class forbidden by this section, but it is by virtue of the evi-

dence alone, and not the information, that we are able
to so determine. The State proved more than it al-
leged. In these days of reform this might be sufficient
to warrant an affirmance of the judgment were it not
for what seems an insurmountable obstacle, namely:
the constitutional provision prohibiting a conviction
except upon a valid and sufficient charge. As hereto-
fore stated, the tables which the evidence shows defend-
ant maintained are not among those enumerated by
the statute, but fall within the general terms thereof.
Where the offense charged is the setting up and keep-
ing of the gaming tables enumerated no more need be
averred, for the statute, in specific terms, denounces
that as a penal offense. In such cases it is a familiar
rule that it is sufficient to charge the offense in the
words of the statute, but where the device charged is
not among those enumerated, must there not be, rec-
ognizing the rule of *ejusdem generis,* sufficient aver-
ments showing it to be one belonging to the enumerated
class, and, therefore, within the general inhibition?
Absent this, can the defendant be said to be constitu-
tionally charged with a crime? Must not the indict-
ment show on its face, and from its allegations, that
the thing for which an accused is placed upon trial
comes within the definition of the statute? Only
games of a certain distinctive character are denounced
by this section, and this is of the very essence of the of-
fense. The correct rule is stated in 20 Cyc. 906, as fol-
lows: "The general rule is that an indictment for
keeping, setting up, or exhibiting a gaming-table or
other gambling device is sufficient if it follows the
language of the statute. But where the indictment al-
leges the keeping of other implements or gambling de-
vices than those *named* in the act, they should be suf-
ficiently described to show them to be gambling tables
or devices within the purview of the statute." This
doctrine was clearly recognized in the case of State v.
Etchman, 184 Mo. 193, the opinion in that case being

written by Judge Fox, who also wrote the opinion in State v. Locket, 188 Mo. 415, which will be noticed later.

The present information charges that defendant set up and kept "a certain table and gambling device commonly called a crap table." There is no allegation defining a crap table or of what it consists, or how designed, or how and by what means the game of craps is played—in short, there is no allegation bringing it within the class of the enumerated devices, unless (first) we take judicial notice of what constitutes a crap table, and how the game of craps is played; or (second) unless the general allegation that it was "a gambling device adapted, devised and designed for the purpose of playing games of chance for money or property" is sufficiently descriptive thereof to supply the missing information.

As to the first proposition, we have abundant authority that we do not so judicially know (State v. Solon, 247 Mo. 672; State v. Etchman, 184 Mo. 193), and this soft impeachment we also on other and purely personal grounds deny.

As to the second proposition, it is sufficient to say that the allegatioin is more in the nature of a conclusion than a statement of fact. [State ex rel. v. Railroad, 240 Mo. l. c. 50.] It can, with fitness, be applied to and be said to be equally descriptive of a pack of playing cards (State v. Gilmore, supra), a poker table without other paraphernalia (State v. Solon, supra), gun and target (State v. Bryant, supra), a horse race (State v. Lemon, supra); or, in fact, any of the "gaming tables and devices" included and prohibited by the misdemeanor section, to-wit: Section 4753, Revised Statutes 1909. In truth, substantially the same language is used and necessary when charging an offense under the misdemeanor section (State v. Howell, 83 Mo. App. 198); so the use of that phrase alone cannot possibly bring the alleged offense within the defini-

tion of the felony statute. Something more evidently is required. In State v. Miller, 132 Mo. 297, this court said: " 'The statutory indictment must specify on its face "the criminal nature and degree of the offense . . . and also the particular facts and circumstances which render the defendant guilty of that offense." ' [1 Bishop, Crim. Proc. (3 Ed.), sec. 625.]" See also State v. Terry, 109 Mo. 601.

In discussing a statute in substance like ours, and an indictment similar to the one at hand, it is said in Huff v. Commonwealth, 14 Gratt. 648: "Where the offense charged is for keeping and exhibiting a game not enumerated, there must be some averment showing it to be one of the unequal games belonging to the same class with the enumerated games. . . . The charge that the game is unlawful does not cure the defect. The offense must be so charged as to appear to be unlawful; otherwise, the allegation that an act was unlawful, would dispense with all averments showing it was unlawful."

While the employment of the general words heretofore quoted are, under another rule of construction, essential to a valid charge, they cannot supply other material allegations of fact.

In the case of State v. Solon, supra, suppose the indictment had not alleged the element of which the court found there was no evidence, namely: the means by which poker is played, and which caused the reversal thereof, should defendant have been put upon trial? And yet without so alleging the indictment would have been just as good as the one in the instant case. Must we impute to a defendant a knowledge of what constitutes a poker table or a crap table and how they are operated when we judicially disclaim such knowledge? Is he not entitled to be advised of this by the indictment?

Our conclusion is that the information in this case is wholly insufficient, and in this we are sustained by

both logic and the weight of authority. It has been so held in Tummins v. State, 18 Tex. App. 13; Huff v. Commonwealth, 14 Gratt. 648, and numerous other cases.

It is true that the present information has heretofore been held sufficient by this court, and this alone is responsible for our hesitancy to hold to the contrary, but we have frequently said that a question of law is not settled until it has been correctly decided.

In the first case (State v. Rosenblatt, 185 Mo. 114) there is a brief discussion of the indictment, but an analysis thereof discloses that the conclusion that the indictment is sufficient is predicated upon the statement that the statute under discussion is broad enough to and does, include the setting up and keeping of *all* devices which may be used for playing games of chance. With this in mind, the court held that the statute individuated the offense, and that it was unnecessary to allege more than the words of the statute. Further consideration of this case indicates a glaring inconsistency. In discussing and determining the character of games and devices to which the statute is applicable the court, as heretofore stated, recognized the rule of *ejusdem generis,* but when it came to determining the sufficiency of the charge, the court expressed the opposite view and held it applicable to all devices. This error on the part of the court is again apparent from what it says at page 123, when attempting to distinguish our statute and the indictment then under discussion from the case of Huff v. Commonwealth, 14 Gratt. 648. The court in this connection said: "It was not necessary to allege that chuck-a-luck or craps or both were of a *like kind* of gambling device as A B C, faro bank, E O, roulette, keno or equality. The decision in Huff v. Commonwealth, 14 Gratt. 648, was predicated on a statute which, after designating certain gambling devices, proceeded to say, '*or a table of like*

*kind.'* No such words appear in section 2194, Revised Statutes 1899.''

In the case of Huff v. Commonwealth, supra, the court held that an indictment in the form of the instant one was insufficient for the reasons heretofore pointed out. It is clear that the statute in that case, by the use of the words ''or a table of like kind,'' added nothing whatever thereto, and did not change the construction which the courts would have placed thereon even in their absence. In that case the Legislature merely expressed in the statute that which we attach in such cases by construction, and the distinction which this court attempted to make in the Rosenblatt case only emphasizes the incorrectness of the decision.

The cases of State v. Locket, State v. Holden and State v. Lee, supra, were decided upon the strength of the Rosenblatt case, and the opinions therein contain nothing throwing light on this question. These opinions were written by Judges Gantt and Fox, and it is not amiss to note that in the case of State v. Etchman, 184 Mo. 193, Judge Fox wrote the opinion, and in it Judge Gantt concurred. In that case the indictment charged the setting up of a roulette *wheel,* where the statute denounces, among other devices, a roulette *table.* In that case the indictment was held insufficient, the court saying: ''It may be said that those who are familiar with the game know that 'roulette wheel' has reference to 'roulette table.' That does not meet the difficulty.'' (So might it be said by those familiar with a crap table that it is of the same class of devices as those named in the statute, but ''that does not meet the difficulty.'') The opinion in this case was rendered at the same term as was the opinion in the Rosenblatt case, and is clearly inconsistent therewith. Neither in the Rosenblatt, Locket, Holden or Lee cases is there any satisfactory authority cited sustaining the conclusion that the indictments therein are sufficient, but, in our opinion, such authorities as are cited, when

analyzed, tend to the contrary. To the extent that these cases hold an information or indictment in the form of the one in this case sufficient they should be and are overruled.

II. This record also presents another question requiring consideration. In prosecuting alleged offenders the State must not take inconsistent positions. If, as the State contends, the information in this case is rendered sufficient by the description that the table is one *commonly known* as a crap table, was it not incumbent upon the State to show that there is a table *so commonly known*, and that it was this particular kind of a table that defendant set up and kept? Each witness for the State who testified relative to this subject stated that the tables which defendant maintained and operated were not of the kind which they commonly knew as a crap table. To the contrary, the tables are of radically different design and construction, as is evidenced by the uncontradicted exhibit offered by defendant, and positively identified by the State's witnesses. If there is such a table as has, through common and popular usage, become generally known as a crap table, and defendant's exhibit truly and correctly represents the same, this defendant could not plead as a bar to a subsequent prosecution his conviction of having set up and kept the tables which the evidence here shows he did. This only emphasizes the importance and necessity of fairly describing the character of the device intended to be charged. Under this information the most that could be said is, that defendant was called upon to answer the charge of keeping a table which had become generally known as a crap table. It did not require him to answer to the charge of maintaining tables of an entirely different design and construction.

*Margin note:* Commonly Known: Proof.

It follows that if the information in this case were held sufficient we would necessarily have to hold that the proof disclosed a fatal variance and that the judgment could not stand. We have gone to a considerable extent in holding that section 5114, Revised Statutes 1909, cured questions of variance, but in none of our former holdings have we gone so far as to hold that a variance of this character was thereby cured.

Not only was there no evidence upon which a jury could find that the tables kept by defendant were of the kind commonly known as a crap table, but the court instructed, in effect, that this was immaterial.

III.   It is further urged that there is a fatal variance between the charge and proof as to the location of the room in which the alleged games were played. Relative to this, it is sufficient to say that several witnesses for the State testified positively that this place was generally known and recognized by the number and description which the information alleges, and was so designated by defendant himself, and from this the jury was warranted in finding that the room was located as alleged. While it is unnecessary for the purposes of this case to go further, nevertheless, it is my opinion that if such a variance were disclosed it is one of that type that is cured by section 5114, Revised Statutes 1909. We have repeatedly and uniformly so held. [State v. Carragin, 210 Mo. l. c. 371;  State v. Barker, 64 Mo. l. c. 285; State v. Smith, 80 Mo. l. c. 520;  State v. Harl, 137 Mo. l. c. 256;  State v. Sharp, 106 Mo. l. c. 109;  State v. Waters, 144 Mo. l. c. 347;  State v. Wammack, 70 Mo. l. c. 411;  State v. Sharp, 71 Mo. l. c. 221;  State v. Ward, 74 Mo. l. c. 255;  State v. Nelson, 101 Mo. l. c. 482;  State v. Dale, 141 Mo. l. c. 287;  State v. Sharpless, 212 Mo. l. c. 202.]   The allegation of the exact location of the place where the game was conducted

*Location of Tables.*

State v. Wade.

was unnecessary and did not relate to any constituent part of the offense. Unless the above statute was held to apply to instances of this character it would, in effect, be meaningless.

IV. The record discloses several other assignments of error, but, since they relate to matters which the State can easily guard against on a retrial, we deem it unnecessary to discuss or decide them.

For the reasons heretofore assigned the judgment is reversed, and, in order to enable the State, if it sees fit, to further proceed on a valid and sufficient charge, the cause is remanded. *Faris* and *Blair, JJ.*, concur; *Woodson, C. J.*, and *Graves, J.*, concur in separate opinion by *Graves, J.; Bond* and *Walker, JJ.*, dissent.

GRAVES, J. (concurring)—I concur in all of my brother's opinion except paragraph three. In that I neither concur in the law announced nor the facts stated. I think the facts shown as to where these tables were found are at variance with the charge in the information, and therefore fatal to the judgment here. Nor do I agree that such a variance is cured by the statute named. I therefore not only agree that the judgment should be reversed for the reasons stated by the majority opinion, but for the additional reason suggested above. *Woodson, C. J.*, concurs in these views.