STATE, EX REL. SHANKS ET AL., *v.* BOARD OF COMMISSIONERS OF CARROLL COUNTY, ETC.

[No. 20,095. Filed February 18, 1904.]

HIGHWAYS.—*Purchase of Toll Roads.—Act of 1895.—Repair of Purchased Roads Must be by County Commissioners.*—Under the act of March 9, 1895, authorizing county commissioners to purchase toll roads, and providing that when any such road is purchased and conveyed to the county it "shall thenceforth be free, and shall be kept in repair, as provided by law for the repair of other roads," the words "other roads" mean other free roads of the same class. *pp. 184–193.*

SAME.—*Duty of County Commissioners to Repair Free Gravel Roads Purchased Under Act of 1895.—Mandamus.*—Under the act of March 11, 1901, constituting the board of commissioners of each county a board of free turnpike directors, and vesting in them the exclusive control and management of such roads, it is the duty of such board to take charge of and repair roads purchased pursuant to the act of March 9, 1895; and upon their failure to do so mandamus will lie. *pp. 185–193.*

From Carroll Circuit Court; *T. F. Palmer,* Judge.

Mandamus by State, on the relation of Leonidas P. Shanks and others, against the Board of Commissioners of Carroll County. From a judgment for defendants, plaintiffs appeal. *Reversed.*

*Reeder & Sullivan,* for appellants.

*J. H. Cartwright* and *J. P. Wason,* for appellees.

JORDAN, J.—This action was instituted by the relators, as citizens and taxpayers of Carroll county, Indiana, to mandate the board of commissioners of that county, *ex officio* a board of directors of all free gravel, macadam

and turnpike roads, to assume the control and management of a certain toll road purchased by said board on the 7th day of May, 1901, from the Logansport & Burlington Turnpike Company. The board appeared to the action and successfully demurred to the petition for want of facts; and, on the relators refusing to plead further, the court rendered judgment against them for costs.

The only error assigned is upon the ruling of the court in sustaining the demurrer to the petition.

The material facts set up in the petition, in addition to those above stated, are substantially as follows: On the 8th day of January, 1901, a petition signed by one hundred and more freeholders of Carroll county, Indiana, was filed before the said board of commissioners, praying for the purchase of the Logansport & Burlington Gravel Road, which road at said time, and for many years prior thereto, was and had been owned and operated in said county as a toll road by said Logansport & Burlington Turnpike Company. The board, after considering said petition, appointed appraisers to appraise said toll road; and these appraisers on the 7th day of May, 1901, reported favorably in respect to the purchase of the road. On the same day the board of commissioners found that said report was in all things true, and thereupon entered an order for the purchase of the road; and on the same day the aforesaid turnpike company, by and through its proper officers, conveyed to said board of commissioners all of its right, title, interest, and franchise in and to said toll road, which conveyance was accepted by the board of commissioners, and thereupon the company surrendered and relinquished all management and control over the road, and have not since exercised any jurisdiction or management or control over the same.

It is further alleged that more than eighteen months have elapsed since the road was purchased and conveyed as aforesaid, but the board of commissioners has done

nothing in respect to managing, maintaining, or repairing the road. It appears that, owing to the constant and great travel thereover, this road has become and is in bad condition and out of repair. Since the purchase and conveyance of the road to the county, the relators have frequently notified the board of its bad condition, and have often requested and demanded that the board of commissioners take charge of, manage, and repair said road, as provided by law for the maintenance and repair of other free gravel, macadam, and turnpike roads within said county, but said board has always refused to do so, and so continues to refuse. Copies of the petition, deed of conveyance, and other papers in the proceedings before the board in the matter of the purchase of the toll road in question were filed with the petition for mandate as exhibits. The prayer is that the court, by a writ of mandamus, compel said board of commissioners, as *ex officio* a board of directors of all free gravel, macadam, and turnpike roads in said county, to take charge of and assume the management and control of said road, and assign the same to one of its members, as provided by law for the maintenance and repair thereof, etc.

The material question at issue between the parties is as to whether, under the facts, the road in dispute, after its purchase and conveyance to the county, was one which said board, under the law, was required to assume the management and control thereof.

The contention of counsel for appellant is that after its purchase and conveyance it became the duty of the board of commissioners, under the law, as *ex officio* directors of all free gravel, macadam, and turnpike roads of the county, to manage and control said road, and provide for the repair thereof, as required by an act of the legislature approved and in force March 11, 1901 (Acts 1901, p. 439, §6868 *et seq.* Burns 1901). It is asserted that upon the refusal of the board of commissioners to discharge this duty en-

joined upon it by law, the performance thereof can be compelled by mandamus.

Counsel for appellee, however, insist that by the provisions of an act of the legislature, approved March 9, 1895 (Acts 1895, p. 174, §6959a *et seq.* Burns 1901), under the authority of which it is conceded that the road in controversy was purchased, the legislature did not intend that it should pass under the control and jurisdiction of the commissioners, but should be maintained and be repaired under the authority of the statutes pertaining to ordinary highways. It is therefore asserted, in opposition to the contention of appellants' counsel, that the act of the legislature approved March 11, 1901, can have no application to the control and repair of the road in controversy.

The opposite views entertained by the counsel of the respective parties in regard to the proper interpretation of the provisions of the act of 1895 require an examination of the statutes—repealed and unrepealed—of this State enacted in relation to the construction and maintenance of free gravel, macadam, and turnpike roads, and also the laws pertaining to the purchase by boards of commissioners of toll roads for the purpose of converting them into highways to be open to the travel of the public thereover without the payment of toll. Reviewing these laws from the year 1877, it will be found that, by an act approved March 3d of that year, the construction by boards of commissioners of gravel, macadam, or paved roads to be opened to the public free of toll was authorized. Acts 1877, p. 82. This law made no provision, however, for the repair of these roads. Consequently the necessity for some legislation in regard to their management and repair after their construction was recognized; and the legislature, by an act approved March 24, 1879 (Acts 1879, p. 226), provided that the board of commissioners of any county, by virtue of their office, should constitute a board of turnpike directors, under whose control and management all

free gravel roads of the county were exclusively vested; and provisions were made therein for the maintenance and repair of these roads under the authority of the board of commissioners as such turnpike directors. This act of 1879, as originally passed, was apparently limited and made to apply only to free roads constructed by boards of commissioners, for section three expressly provided that "wherever the word turnpike occurs in this act it shall be taken and held to include all roads constructed or improved under the act entitled 'An act to authorize the county commissioners to construct roads, on petition of a majority of resident landowners along and adjacent to the line of said road,' approved March 3, 1877."

In 1881 (Acts 1881, p. 531), a law was passed authorizing the board of commissioners of any county, when petitioned by a certain number of freeholders and citizens thereof, to submit to the voters of the county, at an election as therein provided, the question of the purchase of any turnpike or toll road. If the majority of those voting at such election were in favor of purchasing the road in question, the board of commissioners were empowered to make the purchases, and thereupon the road was to be conveyed by a proper deed by the owners thereof to such board, and when so conveyed it became a free road. By section five it was provided that such toll roads, after becoming free turnpike roads, should be kept in repair the same as other free turnpike roads, under the act approved March 24, 1879. *Vide* §6939c Burns 1901.

In 1883 (Acts 1883, p. 121) sections one and three of the act of March 24, 1879, *supra,* were amended. The latter section was changed to read as follows: "Wherever the word turnpike occurs in this act, it shall be held and taken to mean and include all turnpike and gravel roads, either purchased or constructed by counties, and which are used as free turnpike or gravel roads." This is §6874 Burns 1901.

On March 8, 1883, an act was approved which provided for the purchase by the board of commissioners of toll roads, and their conversion into free roads. Acts 1883, p. 183. This act authorized the board to purchase such roads upon a petition signed by any number of stockholders of the toll road company owning over one-half of the stock thereof, and was also signed by a majority of the land-owners whose lands would be benefited or assessed for the purchase of the road. Section eleven provided that all gravel or macadamized toll roads purchased and converted into free roads thereunder should be kept in repair the same as other free turnpike roads were authorized to be kept in repair by the act of 1879, *supra*. In 1885 (Acts 1885, p. 209) sections one to six of this act were amended. By this amendatory act the board of commissioners was not only authorized to order the purchase of a toll road, but was required under the same proceedings to order the repair of the road at the time of its purchase; and the expense incurred in putting it in good repair, together with the expense incurred in the purchase thereof, was to be assessed upon all of the lands benefited within one mile and a half of either side of the road, and also upon all lands located within the same distance of the beginning and terminus of the road. The purpose of the provisions in regard to the initial repair of the road, and authorizing the expense of such repair to be assessed against the lands benefited within the prescribed taxing district, was manifestly to exempt the taxpayers of the county in general from being required to pay the expense of this particular repair, for it will be observed that the act of 1879, *supra,* provided that the money for keeping free roads in good repair should be raised by an assessment against all of the taxable property in the county. Section eleven of the act of March 8, 1883, *supra,* which, as shown, provided that toll roads purchased by the county should, after such purchase, be maintained and kept in repair as provided by the

statute of 1879, *supra,* was left untouched by the amendatory act of 1885.

Under an act approved March 8, 1889 (Acts 1889, p. 276), boards of commissioners were empowered to purchase toll roads when petitioned to do so by fifty freeholders and citizens of the township or townships in which such roads were situated. In the event the proposition to purchase was authorized at an election by a majority of the voters of such township or townships, section six of this latter act provided that all roads purchased thereunder were to be free of toll and should be kept in repair "the same as roads constructed under the free gravel road laws of the State."

By an act approved March 3, 1899 (Acts 1899, p. 403), the legislature appears to have again declared that the board of commissioners of every county in this State should constitute a board of turnpike directors, and that the management, control, and repair of all the free turnpikes of the county should be vested in such board.

The act of 1895, of which mention has already been made as the law under which the road in controversy was purchased, provides that the board of commissioners, when petitioned to do so, by 100 freeholders of the county, shall be authorized to purchase any or all toll roads therein, and pay for the same as provided. It is provided by this act that the purchase money for such road or roads shall be paid out of any funds in the county treasury not otherwise appropriated or required for other purposes; and, in case there are not funds sufficient in the treasury, the board is authorized to issue the bonds of the county in order to raise the necessary money to pay for the road or roads so purchased. The latter part of section five of the act of 1895, as originally enacted, and as the same section stands since its amendment in 1901 (Acts 1901, p. 50) provides "that no money shall be paid or bond delivered to such vendor until a conveyance has been made of such toll

road, including its franchise to such county. *And when so
conveyed, said road shall thenceforth be free, and shall be
kept in repair, as provided by law for the repair of other
roads.*" (Our italics.)

The act approved and in force March 11, 1901 (Acts
1901, p. 439), appears to have superseded the act of 1899,
*supra,* regulating the repair of free gravel and turnpike
roads. Section one of this act of 1901 provides: "That
by virtue of their office the commissioners of each county
in this State are hereby constituted a board of directors
for all free gravel, macadam and free turnpike roads in
such county under whose management and control all such
roads are hereby exclusively vested. It shall be the duty of
such board of directors at its first meeting after this act
takes·effect, to divide the free gravel, macadam and turn-
pike roads of such county into three districts, each district
to contain as nearly as possible the same number of miles
of such road. Said directors shall by agreement assign one
of their number to each of said districts, and such director
shall have entire charge of the district so assigned to him.
Such director shall employ all labor and purchase all ma-
terial necessary to keep the district under his control in
repair. He shall oversee and superintend the labor em-
ployed and see that faithful work is done." Section two
authorizes the appointment by the board of directors of
superintendents, who are required to execute an official
bond to the board of commissioners, and are to have charge
of the repair of all free gravel, macadam, and turnpike
roads within their respective divisions or districts. Other
sections of the act cover details in relation to the repair of
this system of improved roads within the county.

It is contended by counsel for appellee that the part of
section five of the act of 1895 which we have embraced in
italics fully reveals that it was the intent and purpose of the
legislature that all toll roads purchased and conveyed to
the county under the authority of that statute should not

become a part of the class or system of free and improved roads of the county, to be controlled and repaired under the jurisdiction of the board of commissioners, acting as the board of directors, but, upon the contrary, the legislature intended to charge the repair of such toll roads, after their purchase by the county, to the trustees and supervisors of the township or townships through which the road passed. It is contended that this particular purpose of the legislature is fully disclosed in the closing part of section five of the act in question, which declares that after the purchase and conveyance of the road to the county it "shall be kept in repair, as provided by law for the repair of other roads." Construing this particular provision in the light of the provisions enacted prior to the statute of 1895 relating to the same subject-matter, and, in reason, no such interpretation as that contended for by counsel for appellee can be adopted. The various acts to which we have referred, enacted as far back as 1879, fully reveal that it was the positive will and purpose of the legislature to have all free gravel, macadam, and turnpike roads of the county constitute a particular system or class of roads, and to vest the exclusive management, control, and repair thereof in the board of commissioners, the members of which body were declared to be *ex officio* a board of turnpike directors. It fully appears from these statutes that the legislature did not intend to confine this system of free and improved highways alone to roads which had been constructed as such under proceedings had before boards of commissioners, but intended, also, to include therein all toll roads which had been purchased and converted into free highways. It would be unreasonable to suppose that the legislature, in the enactment of the act of 1895, intended to change its former policy or purpose, and depart from a method which in 1881 it had declared should apply to the management and repair of toll roads after their purchase and conversion into free roads.

It will be observed that under section nineteen of the law of 1899 (Acts 1899, p. 343), concerning county business, it is provided that "every estimate required by said section sixteen to be prepared by the board of county commissioners shall embrace, in items separate from each other, each of the following matters:  *  *  *  (8) Amount of repair of free gravel roads  *  *  *  naming each road, the length thereof, and amount required therefor." It is provided in the same act that the amount required for such purpose shall be levied by the county council. This provision of the act of 1899 is certainly of force, as it serves to show that some four years after the passage of the act of 1895 the legislature still considered the repair of all free gravel roads as a matter of county business under the control of the board of commissioners.

Again, considering the phrase "other roads," as used in the act in question, from another standpoint, and there can be no doubt in regard to the particular roads to which it refers. It will be noted that the legislature in enacting the act of 1895, *supra,* was dealing with the purchase of toll roads, and their conversion into free roads. The roads mentioned in the act are of a particular description or kind. Under such circumstances, the rule applicable to its construction, as asserted by the authorities, is "that where words of a particular description in a statute are followed by general words that are not so specific and limited, unless there be a clear manifestation of a contrary purpose, the general words are to be construed as applicable to persons or things, or cases, of like kind to those designated by the particular words." *Nichols* v. *State,* 127 Ind. 406, and authorities cited. In compliance with this canon of construction, as there is nothing to indicate that the legislature intended the contrary, the phrase "other roads" must be construed as meaning other free roads of the class or kind to which those purchased under the act would belong when conveyed to the county.

We conclude, and so hold, that it devolved upon appellee under the act of March 11, 1901 (Acts 1901, p. 439), to assume the management and control of the road in suit, and perform the duties in regard thereto as enjoined by that statute.  The court therefore erred in sustaining the demurrer to the petition of the relators, for which error the judgment is reversed, and the cause remanded.