JOHN D. KIRKLAND, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed July 7, 1923.

1. An indictment of a county officer for malpractice in office not otherwise especially provided for under the provisions of Section 5354 Revised Statutes need not allege criminal intent nor that the act constituting the malpractice was done wilfully, corruptly or in bad faith.

2. Section 5354 Revised General Statutes denounces two offenses, one wilful extortion in the charge of fees or commissions by an officer of the State and the other any malpractice in office not otherwise especially provided for. A criminal intention is not a necessary element in the latter statutory offense.

3. A motion to quash an indictment containing two or more counts will be overruled if any one of the counts is good.

A Writ of Error to the Circuit Court of Jackson County; C. L. Wilson, Judge.

Judgment affirmed.

*Paul Carter, Ira A. Hutchison and Amos E. Lewis,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, and *J. B. Gaines,* Assistant, for the State.

ELLIS, J.—In October, 1921, the plaintiff in error was indicted by the grand jury for Jackson County for the offense of malpractice in office not otherwise especially provided for by law.

There were three counts to the indictment. The defendant below was alleged to have held the position of County Commissioner for Jackson County during the year 1920 and the month of December, 1919. The first count alleged that the defendant committed the offense by ''approving and certifying and causing to be paid out of the Road and Bridge Fund of said county a large amount of county moneys apportioned to said fund from the taxes and revenues of said county, to-wit: The sum of $4,875.00 for lumber which he the said John D. Kirkland as such County Commissioner represented and pretended to the Board of County Commissioners of said county had been purchased by him as such County Commissioner and had been received by said County for use in the construction and maintenance of bridges and culverts in County Commissioners District No. 1 of said county, while in truth and in fact said lumber had not been received by the county, and had not been used in the construction and maintenance of bridges and culverts in said county or in said district during said time, or any other time, nor left on hand for use by his successor in office.''

The second count charged that the offense was committed ''by then and there approving and certifying vouchers as County Commissioner for the expenditure from the Road

.and Bridge Fund of said County for lumber and material for the construction of bridges and culverts, and for feed, care and maintenance of livestock used for the working and  upkeep of the public roads of the county, and causing large sums of money raised therefor by taxation upon the estimates and appropriations of the Board of County Commissioners of said county duly made and published by said board for the year 1920, to be paid out in payment and settlement of said vouchers for lumber and feed of livestock aforesaid, in excess of 95% of the estimated revenue of said county for said purposes and in excess of the estimates and appropriations of said Board of County Commissioners for said purposes."

The third count need not be considered because at the close of the evidence offered by the State, the defendant offering no evidence in his behalf, the State Attorney announced to the court that the State would rest its case upon the first two counts of the indictment, thereby eliminating the third count.

The jury found the defendant guilty as charged, and judgment and sentence were entered against him. To the judgment entered he took a writ of error.

The seventh assignment of error rests upon an order overruling a motion to quash the indictment.

The motion contains eight grounds: First, that the indictment is vague and uncertain and alleges no violation of law; second, that it does not sufficiently inform the defendant of "what charges of violation of law he is expected to meet;" third, it does not allege that the acts alleged were wilfully or corruptly committed; fourth, that it does not allege the acts charged to have been committed in bad faith. The fifth ground was addressed to the first count of the indictment and attacked it upon the ground that it does not allege any facts which would tend to show

that the defendant had any knowledge that the lumber mentioned in said count had not been received by the county and had not been used in the construction and maintenance of bridges and culverts in the county or district during the time alleged or any other time or that the lumber was not left on hand for use by defendant's successor in office. The sixth ground of the motion attacked the second count of the indictment because it did not allege that the defendant "voted" for payment of the claims and for the expenditure from the Road and Bridge Fund of money raised by taxation in excess of the estimates and appropriations made by the Board of County Commissioners, and because the count did not allege that the expenditures in "excess of 95% of the appropriation and estimate" were expended between October 1st and September 30th of the following year and because the malpractice in office charged is "otherwise specially provided for by law by Section 5332 of the General Revised Statutes" and because the allegations are not sufficient to charge the defendant under that statute. The duplicate sixth ground of the motion attacks the third count and may be considered eliminated from the motion as the State abandoned that count. The seventh ground attacks the indictment because it was not signed by the grand jury and the eighth ground attacks the indictment as not charging any criminal offense.

The seventh ground of the motion is without merit. See Kirkland v. State decided June, 1923.

Counsel for the plaintiff in error discuss in their brief the first, second, third, fourth and sixth grounds of the motion. They say that because the indictment fails to allege an evil intent, or knowledge on defendant's part that the bills presented for lumber were for greater amounts than had been furnished the indictment is bad, because for

anything appearing to the contrary the defendant's acts may have been the result of mistake, and that the first count was bad because he cannot be held criminally liable for a shortage of lumber caused by the failure of the vendors of it to deliver the amount purchased and paid for; that the indictment should have charged a wilful or criminal intent on defendant's part accompanying the acts with which he was charged.

Section 5354 of the Revised General Statutes is as follows: "Any officer of this State who wilfully charges, receives or collects any greater fees than he is entitled to charge, receive or collect by law, or who is guilty of any malpractice in office not otherwise especially provided for, shall be punished by imprisonment not exceeding one year, or by fine not exceeding five hundred dollars."

The objection that the indictment does not allege a criminal intent or guilty knowledge on defendant's part in the commission of the acts alleged is answered by the Attorney General as follows: "The Statute (Revised General Statutes, Sec. 5354), providing for punishment of one 'who is guilty of malpractice in office not otherwise provided for' does not require that the act constituting malpractice shall be done either wilfully, corruptly or in bad faith, and it is unnecessary that an indictment allege it to have been so done."

That proposition has been settled by this court in the case cited by the Attorney General, Smith v. State, 71 Fla. 639, 71 South. Rep. 915, in which this court held that it is within the power of the Legislature to dispense with the necessity for a criminal intent and to punish particular acts without regard to the mental attitude of the doer. And that Section 3481, General Statutes of 1906, which is now Section 5354 of Revised General Statutes, denounces two offenses: one wilful extortion in the charging of fees

or commissions by an officer of the State, and the other "any malpractice in office not otherwise especially provided for" to which the word "wilfully" does not apply and in which it is not an element.  See also 2 Bishop's New Criminal Proc., Sec. 521-523 (1) ; 1 Bishop's New Criminal Law, Sec. 302-313.

The charge given by His Honor C. L. Wilson, the Judge of the Circuit Court before whom this case was tried, correctly states the law as applicable to the theory of the indictment and the evidence adduced.  The charge was as follows:  "If in this case you should believe from the evidence that the defendant was a member of the Board of County Commissioners of Jackson County, Florida, during the time alleged in the indictment, and that the County Commissioners agreed on the budget and fixed the amount for the fiscal year to be expended for roads and bridges in the county at the sum of $5,000.00, and that the defendant being a member of the Board and acting with them, bought or pretended to buy, lumber in his district and drew warrants and assisted in drawing the warrants for an amount exceeding the sum of $5,000.00 for one year, then it will be your duty to find this defendant guilty, whether he actually used the lumber in his district or not; if that lumber had been distributed throughout every Commissioner's District in the county, and they had drawn enough to run the amount over the $5,000.00 allowed in the budget, then he would still be guilty because he assisted in the malpractice by himself, as Chairman of the Board, in signing the warrants as chairman.  It matters not that others may be guilty along with him; we are not trying others, we are only trying him now, so as I say, if he participated in this matter and helped to fix in the budget the sum of $5,000.00 as the limit for road and bridge work in this county for the particular year, and

he then went on and participated in paying out more than the $5,000.00 then he is guilty, and it would be your duty to find him guilty, as I said before, whether he used the lumber in his own district or whether it might have been used in any other part of the county, or whether he might have used it privately for himself.

Other attacks made upon the indictment as a whole are without merit, because as the first count is good and defects, if any existed, would not result in impairing the entire indictment under a motion to quash it. See Kirkland v. State, *supra.*

There is no assignment of error based upon the court's ruling denying those grounds of the motion directed against the second count.

The other assignments of error relating to the reception and rejection of evidence are without merit.

The evidence showed that the County Commissioners having under consideration the necessities of the county and the requirements for the different purposes to meet the expenses during the fiscal year from October 1, 1919, to, and including, September 30, 1920, determined and declared the expenses to be as set forth in the record ''for which the revenue for the year 1919 from *ad valorem* taxation and the estimated receipts from other sources will be available.''

In that estimate the cost of road material was fixed at five thousand dollars. The defendant as Chairman of the Board of County Commissioners participated in and countersigned warrants for money to be paid for such material in the sum of six thousand six hundred and forty-one dollars and fifty cents. That during that period lumber to the amount of 233,766 feet was purchased by the county for the defendant's district No. 1 and such bills were approved by him and that there were used for that period

in his district only about one hundred thousand or one hundred and ten or twelve thousand feet, including all that was turned over to his successor. The evidence by which the quantity of lumber used was established showed a method of investigation which, while not the most accurate method of ascertaining the fact, was reasonably certain and efficient.

We quote here the language of the Attorney General which we think is particularly appropriate: "No duty devolving upon a County Commissioner requires a greater degree of care and circumspection than does the conservation of the county's funds, and that procuring the payment of a claim or account out of such funds with an utter indifference as to whether or not the county owed the money would constitute "a breach of good faith and right action" (Etzler v. Brown, 58 Fla. 221, 50 So. 416.)"

There is no error apparent in the record so the judgment is affirmed.

TAYLOR, C. J., AND WHITFIELD, BROWNE, WEST AND TERRELL, J. J., concur.