# DECISIONS

## OF THE

# Supreme Court of Florida

## JANUARY TERM, A. D. 1927

Ex Parte: Ernest Amos.

En Banc.

Opinion Filed January 11, 1927.

1. When a person is held under color of criminal process he is entitled to his discharge from custody upon a writ of *habeas corpus* if the act with which he stands charged or of which he has been convicted is not in law a crime.

2. The writ of *habeas corpus* is a writ of right. It may be issued upon informal application. Neither the right to the writ nor the right to be discharged from custody in a proper case is made to depend upon meticulous observance of the rules of pleading.

3. Upon the writ of *habeas corpus* the question of the guilt or innocence of the petitioner, although the indictment is defective as a sufficient pleading or inartificially drawn, will not be considered by the court.

4. A writ of *habeas corpus* is designed to test solely the question of the legality of the petitioner's imprisonment.

5. The question of the legality of the petitioner's detention in *habeas corpus* proceedings may be presented by exceptions to the return raising questions of law; a denial of the facts

set forth in the return; the allegation of any other fact that may be material; or the petitioner may adopt his petition as a traverse of the return.

6. Section 5354, Revised General Statutes, denounces the crimes of wilfully charging, receiving or collecting greater fees by any officer of the State than he is entitled to charge, receive or collect by law and "malpractice in office not otherwise especially provided for."

7. An indictment charging the Comptroller of the State with failure and neglect to perform his duty as Comptroller in not taking possession of the property and business of a certain bank and retaining the same in his possession until the affairs of the bank were placed in a safe and sound condition, although as Comptroller he had reason to believe that the bank was in an unsound condition, charges no crime under the law of the State.

8. The offense of "malpractice in office not otherwise especially provided for" consists of acts or omissions of the same character of moral turpitude or corrupt breach of official duty as denounced by the first clause of the statute above mentioned.

9. When a statute contravenes or alters a principle of the common law it must be strictly construed and a statute which is supplementary to the common law does not displace that law any further than is clearly necessary.

10. In the construction of a penal statute, if there is doubt as to its meaning, the Court should resolve such doubt in favor of the citizen and against the State.

11. The doctrine of *ejusdem generis* applies to Section 5354, Revised General Statutes, which requires that the meaning to be given to the general words "any malpractice in office not otherwise especially provided for" is influenced by the words of limited meaning used in denouncing the offense committed by officers of the State who wilfully charge, receive or collect greater fees for any service than the law provides for such service.

12. The word "malpractice" as used in Section 5354, Revised General Statutes, is limited in its meaning to the particular species of misconduct or misbehavior enumerated in the first part of the section not necessarily wilful in character, but constituting a breach of·fiduciary duties for a monetary or other unlawful consideration or purpose.

13. Section 5354, Revised General Statutes, denounces two classes of offenses in which the element of bad faith or breach of a fiduciary duty exists.

14. The Comptroller of the State is vested with a discretionary power to interfere and take control of a banking company's affairs when he deems the bank's management to be inefficient and violative of the rules prescribed for efficient service.

15. Sections 4154, 4162 and 4167, Revised General Statutes, vest in the Comptroller of the State the power to remove bank officers under certain conditions and to take possession of the property of a bank found to be in an unsound condition or insolvent and to appoint a receiver to take charge of the assets and affairs of such bank. The power vested is discretionary.

16. The action or non-action of the Comptroller, a constitutional administrative officer of the Executive Department, in discharging duties or exercising his discretionary powers under the banking law of the State is not subject to criminal prosecution for error in judgment not involving moral turpitude or a corrupt breach of an official fiduciary duty.

17. That a constitutional officer, who is subject to impeachment, may not also be subject to indictment for malfeasance, misfeasance or nonfeasance in office, not decided.

18. The common law offense of malpractice in office must be charged as having been wilfully or corruptly done or omitted, when official discretion is involved.

19. An indictment which fails to allege that a State officer corruptly did or omitted to do some act, the doing or omission

to do which lay within his discretion under the law, charges no offense under the provisions of Section 5354, Revised General Statutes.

A case of original jurisdiction.

Petitioner discharged from custody.

*Fred H. Davis,* for Petitioner;

*J. B. Johnson,* Attorney General; *L. R. Baker,* State Attorney Fifteenth Circuit, and *Harris Berlack,* Assistant to State Attorney, *Contra.*

ELLIS, C. J.—Ernest Amos, who is Comptroller of the State, was arrested and taken into custody of the sheriff of Leon County under a warrant issuing out of the Circuit Court for Palm Beach County. The warrant commanded all and singular the sheriffs of the State of Florida to take "Ernest Amos if he be found in your county, arrest and safely keep so that you have his body before the Judge of our Criminal Court of the Fifteenth Judicial Circuit of the State of Florida, at the Court House in West Palm Beach, to answer unto the State of Florida on an indictment against him by the Grand Jurors for the county of Palm Beach for Malpractice in Office," etc.

He applied for and obtained from this Court a writ of *habeas corpus,* alleging in his petition that he was arrested and restrained of his liberty by virtue of a *capias* issuing out of the Circuit Court for Palm Beach County upon an indictment against him returned by the Grand Jury of that county—a copy of the indictment was attached to the petition as a part of it—that he was not committed or detained by virtue of any process issued by any court of the United States or any judge thereof or decree of any competent

tribunal of civil or criminal jurisdiction. It was alleged that his imprisonment was illegal because:

First; the indictment charged no criminal offense against the laws of the State of Florida.

There were other grounds which in the view we have of the case it is unnecessary to mention in detail. In substance, they were: that as one holding the constitutional office of Comptroller, an administrative office under the government of the State, he is subject to impeachment for any misdemeanors in office as provided by Section 29 of Article III of the Constitution and not to indictment and trial until after conviction or acquittal of the offense for which impeachment is the sole primary remedy and punishment and that he had never been informed against or impeached for any of the alleged matters set forth in the indictment; that the matters and things alleged in the indictment as constituting malpractice were and are, as provided by law, matters of judgment and discretion for which no charge of malpractice would lie either for failure to exercise such discretion or the erroneous exercise of it; that jurisdiction to try the petitioner, if it exists at all, exists in the Circuit Court of Leon County, the county in which is located the State Capitol, in which county any official misconduct, if committed at all, must necessarily have been committed and that no evidence existed nor was any offered before the Grand Jurors to support the indictment.

The sheriff's return to the writ was that he held the petitioner under authority of the *capias* which was attached to the return and made a part of it.

The petitioner answered the return in which he adopted the petition as his answer to the return, made it a part thereof and attached a certified copy of the indictment which was referred to in the warrant and made such copy a part of his answer.

There was no joinder of issue upon the answer and the petitioner moved for his discharge from custody.

The Attorney General, with whom upon the brief are Hon. L. R. Baker, State Attorney for the Fifteenth Judicial Circuit, and Hon. Harris Berlack, Assistant to the State Attorney, contends that the indictment against the petitioner, upon which the warrant was issued and by virtue of which he is detained by the sheriff to whom this writ issued, is not before the Court and therefore the question whether it charges any offense under the laws of the State cannot be considered; that the sheriff's return is conclusive and shows that the petitioner is legally held under judicial process; that the Comptroller may be indicted for malpractice in office; that the offense with which he is charged is denounced by Section 5354, Revised General Statutes; that the venue is properly laid in Palm Beach County, and the indictment sufficiently states the offense.

In the case of *Ex Parte* Bailey, 39 Fla. 734, 23 South. Rep. 552, this Court held that where a person is held under color of criminal process he is entitled to his discharge on writ of *habeas corpus* if the act which he stands charged, or of which he has been convicted, is not in law a crime. See also *Ex Parte* Hays, 25 Fla. 279, 6 South. Rep. 64, which was a bastardy proceeding where the petitioner was held under a verdict and judgment against him. The court held that as the affidavit failed to allege certain necessary elements of a case of bastardy the proceedings were *coram non judice* and void and the petitioner should be discharged.

To the same effect are: In re Robinson, 73 Fla. 1068, 75 South. Rep. 604; Thorp v. Smith, 64 Fla. 154, 59 South. Rep. 193; Hardee v. Brown, 56 Fla. 377, 47 South. Rep. 834; Kinkaid v. Jackson, 66 Fla. 378, 63 South. Rep. 705; Pounds v. Darling, 75 Fla. 125, 77 South. Rep. 666; Cason v. Quinby, 60 Fla. 35, 53 South. Rep. 741; *Ex Parte* David-

son, 76 Fla. 272, 79 South. Rep. 727; Crooke v. Van Pelt, 76 Fla. 20, 79 South. Rep. 166.

In other cases the court examined the statute under which the charge was made and finding it invalid discharged the petitioner. See *Ex Parte* Knight, 52 Fla. 144, 41 South. Rep. 786, 120 Am. St. Rep. 191; Harper v. Galloway, 58 Fla. 255, 51 South. Rep. 226, 26 L. R. A. (N. S.) 794n, 19 Ann. Cas. 235.

If the acts charged constitute no offense, do not amount to a crime under the laws of the State, the court under whose process the complaining party is held is without jurisdiction to pronounce sentence or judgment, consequently the detention of the party is illegal in such case.

The writ of *habeas corpus* is a writ of right. It is sometimes issued upon very informal application, *Ex Parte* Pells, 28 Fla. 67, 9 South. Rep. 833. Neither the right to the writ nor the right to be discharged from custody in a proper case is made to depend upon meticulous observance of the rules of pleading. The purpose of bringing the petitioner before the court is to inquire into the legality of his detention and if during the proceedings it appears formally or informally to the court's satisfaction that the person is unlawfully deprived of his liberty and is illegally detained in custody against his will he will be discharged. If the act charged constitutes no offense, or if the statute denouncing the act as a crime is void, the process is illegal, the court is without jurisdiction, the petitioner is unlawfully held. The question of guilt or innocence of the petitioner, where he is charged with an offense against the law of the State, although the indictment is defective as a sufficient pleading, or inartificially drawn, will not be considered by the Court on *habeas corpus*. The legality of his imprisonment is the sole question to be considered and the record will be

examined with a view to determining that question. 12 R. C. L. 1239.

The above authority, cited by the Attorney General, holds that to the return the petitioner may present exceptions raising questions of law or he may deny the facts set forth in the return, or he may allege any other facts that may be material in the case and that the course of treating the petition as a traverse has frequently been followed in some courts. But there is in this case no need for doubt as to the proper practice because the petitioner interposed an answer to the return and made the allegations of his petition part of it. The answer is not denied so we take it that although the burden of proof is not shifted to the respondent the question of the legality of the petitioner's detention is squarely presented. To the same effect is the text in 29 C. J. 163.

In some jurisdictions the petition may be taken as true unless denied by the return or contradicted by other evidence. See Kohl v. Lehlback, 160 U. S. 293, 40 L. Ed. 432, 16 S. Ct. 304; Whitten v. Tomlinson, 160 U. S. 231, 40 L. Ed. 406, 16 S. Ct. 297; Carter v. Barlow, 105 Iowa 78, 74 N. W. Rep. 745; 29 C. J. 163.

It is true that in the Iowa case the Court decided the question on a demurrer to the petition and that the rule in the Federal jurisdiction rests upon statute, but it does not follow that because a writ of *habeas corpus* may be issued in this State upon a very informal petition that the petition may not be treated as an answer to the return. Upon the other hand, it would seem to be more consistent with that practice. In a proceeding of this character the formality of the proceedings is of secondary importance.

Holding to this view as to the pleadings in this case we are brought to the question whether the indictment charges any criminal offense against the laws of the State.

It is contended that the indictment alleges an offense under Section 5354, Revised General Statutes. That section denounces the crime of wilfully charging, receiving or collecting greater fees by any officer of the State than he is entitled to charge, receive or collect by law, or "malpractice in office not otherwise especially provided for."

The indictment did not charge the petitioner with "wilfully" charging, receiving or collecting any greater fees than he was entitled to charge, receive or collect by law, but merely alleged that "Ernest Amos at the time and place aforesaid did then and there commit the offense of malpractice in office." The alleged malpractice is described as consisting, upon the petitioner's part, of a failure and neglect to "perform his duty as Comptroller of the State of Florida," which failure of duty consisted in not taking possession of the property and business of a certain bank and retaining the same in his possession until its affairs were placed in a safe and sound condition, although as Comptroller he had reason to believe that the bank was in an "unsound and unsafe condition."

The indictment, which contains three counts, alleges in the second that the malpractice consisted of failure and neglect to summarily remove from office certain named directors of the bank each of whom the petitioner knew had in violation of law, Section 4151, Revised General Statutes, obtained for himself and co-partnerships and corporations in which he was interested more than forty per centum of the aggregate capital and surplus of bank.

The third count contains the same charge as the second with respect to a different bank called the Commercial Bank and .Trust Company.

In neither of these counts is it alleged that the petitioner charged, received or collected any money or other thing of value in consideration of his alleged failure to act; nor is

there any allegation that he wilfully or corruptly neglected or failed to take possession of the property and business of the bank and retain such possession until the affairs of the bank were placed in safe and sound condition, or to remove the officers and directors who in violation of the provisions of Section 4151, Revised General Statutes, had borrowed from the bank more than forty per centum of its capital and surplus.

In the first place, the provisions of Section 5354, *supra,* apply only to such officers of the State who wilfully charge, receive or collect greater fees for any service than they are entitled to receive, charge or collect by law or to any like malpractice in office.

The statute being a criminal statute the rule that it must be construed strictly applies. Nothing is to be regarded as included within it that is not within its letter as well as its spirit; nothing that is not clearly and intelligently described in its very words, as well as manifestly intended by the Legislature, is to be considered as included within its terms, and where there is such an ambiguity as to leave reasonable doubt of its meaning, where it admits of two constructions that which operates in favor of liberty is to be taken. See *Ex Parte* Bailey, *supra.*

When a statute contravenes or alters a principle of the common law it must be strictly construed and a statute which is supplementary to the common law does not displace that law any further than is clearly necessary. See Minor v. State, 55 Fla. 77, 46 South. Rep. 297; Snowden v. Brown, 60 Fla. 212, 53 South. Rep. 548; Sanford v. State, 75 Fla. 393, 78 South. Rep. 340.

In the construction of a penal statute if there is doubt it is the duty of the Court to resolve such doubt in favor of the citizen and against the State. Texas Co. v. Amos, 77 Fla. 327, 81 South. Rep. 471.

The doctrine of *ejusdem generis* applied to Section 5354, Revised General Statutes, requires that the meaning to be given to the phrase ''any malpractice in office not otherwise especially provided for'' is: any malpractice of the same kind enumerated in the first part of the section; that is to say, wilfully charging, receiving, or collecting greater fees than the officer is allowed by law to charge, receive or collect.

The rule has long been generally accepted as a controlling one in statutory construction. It simply means that ''where an author makes use first of terms each evidently confined and limited to a particular class of a known species of things and then after such specific enumeration subjoins a term of very extensive signification, this term, however general and comprehensive in its possible import, yet when thus used, embraces only things *ejusdem generis*, that is of the same kind of species with those comprehended by the preceding limited and confined terms.''

The maxim is a mere specific application of the broader maxim *''nonscitur a sociis,''* which means that general and specific words which are capable of an analogous meaning being associated together take color from each other so that the general words are restricted to a sense analogous to the less general. See Townsend v. State, 63 Fla. 46, 57 South. Rep. 611; *Ex Parte* Neet, 157 Mo. 527, 57 S. W. Rep. 1025; 70 Am. St. Rep. 638; *Ex Parte* Lingenfelter, 64 Tex. Crim. Rep. 30, 142, S. W. Rep. 555, Ann. Cas. 1914C 765; Misch v. Russell, 136 Ill. 22, 26 N. E. Rep. 528, 12 L. R. A. 125; State *ex rel.* v. Jackson, 168 Ind. 384, 81 N. E. Rep. 62; State *ex rel.* Shanks v. Board of Com'rs of Carroll County, 162 Ind. 183, 70 N. E. Rep. 138; State v. Gardner, 174 Iowa 748, 156 N. W. Rep. 747; L. R. A. 1916D 767, Ann. Cas. 1917D 239; Commonwealth v. Rice, 9 Metf. (Mass.) 253;

State v. Wade, 267 Mo. 249, 183 S. W. Rep. 598; 19 C. J. 1255; 25 R. C. L. 995-996.

The doctrine is a humane one, said Mr. Justice Marshall in *Ex Parte* Neet, *supra,* and ''accentuates the wisdom of the fathers when they objected to being punished for offenses which had not been declared to be offenses by the law. It observes the respective rights of the different coordinate branches of the government, by requiring the Legislature to enact laws and the judiciary to enforce but not create the laws—not even by construction.'' 36 Cyc. 1118.

Section 5354, *supra,* which was Section 3481, General Statutes 1906, was considered by this Court in Jackson v. State, 71 Fla. 342, 71 South. Rep. 332. The Court, speaking through Mr. Justice Cockrell, said: ''The section is directed more particularly against extortionate fees, and it is well known that when the section became a law, State officers in the strict sense were paid fixed salaries almost exclusively, while county officers depended almost wholly upon fees.'' In that case the defendant was a county commissioner and took part as such in purchasing property for the county, for which transaction he received a monetary consideration. The Court held the act to constitute malpractice under the section.

The section was also considered in the case of Smith v. State, 71 Fla. 639, 71 South. Rep. 915. In that case a justice of the peace collected a fine imposed upon a convicted person and neglected to pay over the same to the county treasurer within ten days after the receipt of the same. He was held to be guilty of malpractice in office because, said the Court: ''While all common law crimes consist of two elements—the criminal act or omission, and the mental element, commonly called criminal intent, it is within the power of the Legislature to dispense with the necessity for

a criminal intent, and to punish particular acts without regard to the mental attitude of the doer.''

In each case, however, there was the violation of a fiduciary duty to the pecuniary benefit of the wrongdoer.

Now, the word ''malpractice'' is a broad term. It may mean any professional misconduct or unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties, evil practice, illegal or immoral conduct, misbehavior, practice contrary to rules, wrongdoing; it may be either wilful, negligent or ignorant. See In re Rosenkrans, 84 N. J. Eq. 232, 94 Atl. Rep. 42; 38 C. J. 519.

The word ''malpractice'' being a word of such broad significance obviously must be limited in its meaning to the particular species of misconduct or misbehavior especially enumerated in the preceding part of the section and refers to misconduct not necessarily wilful in character but constituting a breach of fiduciary duties for a monetary or other unlawful consideration or purpose.

The case of Kirkland v. State, 86 Fla. 130, 97 South. Rep. 510, is not inconsistent with this view. In that case the defendant while county commissioner approved and certified and caused to be paid out of county funds a large amount of county funds for lumber which he represented and pretended to the board had been purchased by him as county commissioner and which had been received by the county for use upon the public roads while, in fact, the lumber had not been received by the county and had not been used in the construction of bridges and culverts on the roads nor left on hand for use by his successor. Here was charged misconduct in the disbursement of public funds evincing a breach of good faith and right action amounting to malconduct in office. See Etzler v. Brown, 58 Fla. 211, 50 South. Rep. 416.

While the act was held to be punishable under the sec-

tion without regard to whether it was wilfully done, it was held that the gross carelessness or ignorance of the defendant amounted to a breach of good faith; a violation of a fiduciary duty.

Two classes of offenses are denounced by the statute. In each, however, the element of bad faith or breach of a fiduciary duty must be apparent.

The petitioner in this case, as Comptroller of the State, is vested with the discretionary power to interfere and take control of a banking company's affairs when he deems the bank's management to be inefficient and violative of the rules prescribed for securing efficient service. See Sections 4154, 4162, 4167, Revised General Statutes.

Sections 4154 and 4167, *supra,* are as follows:

"4154.    Bank officers violating law to be removed by Comptroller in addition to penalty.—That in addition to the penalties provided by law, the officer or director of any bank or trust company organized under the laws of this State and doing business in this State, who violates any of the provisions of Sections 4151, 4152, or 4153 shall be subject to summary removal from office by the Comptroller of the State of Florida, and shall not be eligible to re-election to such position or to any other official position in any bank or trust company doing business in this State for a period of five years from the date of such removal."

"4167. Comptroller to take possession of property of bank found in unsound condition; remedies of creditors suspended.—If from any examination made by the Comptroller or any State Bank Examiner acting under his authority, of any bank or banking company, or the affairs of any banker, the Comptroller shall have reason to conclude that any such bank, banking company or banker is in an unsound or unsafe condition, he shall forthwith take possession of the property and business of such bank, banking company or

banker and retain such possession until the affairs are placed in a sound and safe condition, or until a receiver is appointed as provided by law and pending such possession by the Comptroller, all the remedies at law or in equity of any creditor or stockholder against any such bank, banking company or banker shall be suspended.''

Section 4162 provides that the Comptroller may, in a case where he is satisfied that any bank has become insolvent and is in default or that its affairs are in an unsound condition, or threatened with insolvency, or that its liabilities exceed its assets, or that it is transacting business in violation of law, or that it is violating or permitting any of its officers, agents or servants to violate any of the provisions of law relating to banks, appoint a receiver to take charge of the assets and affairs of such bank.

The power, however, is discretionary.　It is the State's policy to repose this power in the administrative office of Comptroller, a constitutional administrative office of the Executive Department.

There is nothing in the banking law of the State to prevent the courts in a proper case from taking control of the assets of a banking corporation and administering them through its receiver.　It provides even for testing the rightfulness and legality of the Comptroller's action in appointing a receiver.　He may take summary action when in his judgment a case requires it, but error in judgment in such case has not by any statute of this State been made a criminal offense; nor was it the purpose of Section 5354, *supra*, to so declare.　Under the banking law of the State the Comptroller's power is discretionary and is to be exercised only when he is satisfied as to the necessity.　See Bryan *et al.* v. Bullock, 84 Fla. 179, 93 South. Rep. 182.

We do not decide that a constitutional officer, subject to impeachment, may not also be subject to indictment for mal-

feasance, nonfeasance or misfeasance in office.   The common law offense, however, must be charged as having been wilfully or corruptly done or omitted.   In the absence of such allegation the indictment in this case merely charges the Comptroller with an error of judgment in a matter where the complicated and intricate details of a banking business may have misled him to unwise non-action, but there is no charge of wilful or corrupt non-action upon his part.

We are, therefore, of the opinion that the indictment charges no offense against the laws of the State; that he is held in detention for no offense and that his imprisonment or detention is without authority of law and therefore illegal.

It is the judgment of the Court that he be and is hereby discharged from custody.

WHITFIELD AND TERRELL AND BROWN, J. J., concur.

STRUM AND BUFORD, J. J., dissent.

WHITFIELD, J., concurring:

It is a maxim not to be disregarded, that general expressions in every opinion are to be taken in connection with the case in which those expressions are used.   If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit where the very point is presented for decision.   The reason of this maxim is obvious.   The question actually before the Court is investigated with care, and considered in its full extent.   Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.   It cannot be reasonably expected that every word, phrase or

sentence contained in a judicial opinion will be so perfect and complete in comprehension and limitation that it may not be improperly employed by wresting it from its surroundings, disregarding its context and the change of facts to which it is sought to be applied, as nothing short of an infinite mind could possibly accomplish such a result. Therefore, in applying cases which have been decided, what may have been said in an opinion should be confined to and limited by the facts of the case under consideration when the expressions relied upon were made, and should not be extended to cases where the facts are essentially different. When this rule is followed, much of the misapprehension and uncertainty that often arise as to the effect of a decision will be practically avoided. 7 R. C. L. 1004; Cohens v. Virginia, 6 Wheat. (U. S.) 264, text 399; Wayerhaeuser v. Hoyt, 219 U. S. 380, 31 Sup. Ct. Rep. 300 ; German Alliance Ins. Co. v. Home Water Supply Co., 226; U. S. 220, 33 Sup. Ct. Rep. 32; Standard Oil Co. of New Jersey v. United States, 221 U. S. 1, text 64, 31 Sup. Ct. Rep. 502; Bailey v. Baker Ice Mach. Co., 239 U. S. 268, text 272, 36 Sup. Ct. Rep. 50; 15 C. J. 970; Carroll v. Lessee of Carroll, 16 How. (U. S.) 275, text 287; Bashore v. Adolf, 41 Idaho 84, 238 Pac. Rep. 534, 41 A. L. R. 932; 15 C. J. 941; Wadsworth v. Union Pac. Ry. Co. 18 Colo. 600, 33 Pac. Rep. 515; Pacific Exp. Co. v. Foley, 46 Kan. 457, 26 Pac. Rep. 665; Townsend v. Norfolk R. & Light Co., 105 Va. 22, 52 S. E. Rep. 970; McCoy v. Handlin, 35 S. D. 487, 153 N. W. Rep. 361; *Ex Parte* Roquemore, 6 Tex. Crim. Rep. 322, 131 S. W. Rep. 1101, 32 L. R. A. (N. S.) 1186, text 1189; Wayerhaeuser v. Hoyt, 219 U. S. 380, 31 Sup. Ct. Rep. 300; 26 Am. & Eng. Ency. of Law (2nd ed.) 169; United States v. Wong Kim Ark, 169 U. S. 649, text 679, 18 Sup. Ct. Rep. 456; Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, text 574-5, 15 Sup. Ct. Rep. 673; The Propeller Genesee Chief v.

Fitzhugh, 12 How. (U. S.) 443, text 455; Carroll v. The Lessee of Carroll, 16 How. (U. S.) 275, text 287; Hart v. Stribling, 25 Fla. 435, 6 South. Rep. 455; People v. Case, 220 Mich. 379, 190 N. W. Rep. 289, 27 A. L. R. 586; Moose v. Board of Commissioners of Alexander County, 172 N. C. 419, 90 S. E. Rep. 441, Ann. Cas. 1917E, 1183; Ann. Cas. 1912C, 1248, Notes; McCoy v. Handlin, 35 S. D. 487, 153 N. W. Rep. 361, Ann. Cas. 1917A, 1046; Myers v. United State, U. S. —, decided Oct. 25, 1926; Rodrigues v. Transmarine Corporation, 215 N. Y. S. 123; Brady v. Welsh, — Iowa —, 204 N. W. Rep. 235; Bashore v. Adolf, — Idaho —, 238 Pac. Rep. 534.

What is said in an opinion upon a point not raised or properly involved cannot control in a subsequent case where the very point is presented for decision. Union Tank Line Co. v Wright, 249 U. S. 275, 39 Sup. Ct. Rep. 276. General words used in a judicial opinion should be construed with such limitations as are required by a refernce to the facts in the case. Smitz v. Wright, 64 Fla. 485, text 486, 60 South. Rep. 225. See also Hart v. Stribling, 25 Fla. 435, 6 South. Rep. 455.

The general language used in Kirkland v. State, 86 Fla. 130, 97 South. Rep. 510, is controlled by the facts of the case. The indictment in that case alleged that the defendant county officer caused stated amounts to be paid out of county funds for articles that had not been received or used by the county, and approved vouchers for payments from county funds in violation of law, which allegations charge a breach of official fiduciary duty involving moral turpitude that constituted the crime of malpractice in office within the meaning of Section 5354, Revised General Statutes, 1920, though the acts were not alleged to have been wilfully or corruptly done.

It is a settled rule in the construction of statutes defining

crimes that there can be no constructive offenses and that to warrant punishment the case must be plainly and unmistakably within the statute.   United States v. Bathgate, 246, U. S. 220, 38 Sup. Ct. Rep. 269 ; Fasulo v. U. S. —, U. S. —, 47 Sup. Ct. Rep. 200, November 29, 1926.

"It is necessary that a sufficient statutory authority should exist for declaring any act or omission a criminal offense."   United States v. Eaton, 144 U. S. 577, text 688, 12 Sup. Ct. Rep. 764.   The latter clause of Section 5354, Revised General Statutes, covers only such cases of malpractice in office as are criminal offenses under a statute or at common law.

The first part of Section 5354, Revised General Statutes, defines a specific criminal offense, while the latter part merely prescribes punishment for any officer of this State who is guilty of any malpractice in office not otherwise specially provided for.   The "malpractice in office" for which punishment as a crime is prescribed in the latter part of Section 5354, Revised General Statutes, is not defined in any other statute and must be determined from the common law in so far as it is in force in this State.

At common law a public officer is punishable criminally for official conduct that involved corruption, and if the official misconduct charged does not ordinarily involve moral turpitude or like evil intent or purpose, it is essential that it be alleged and proven that the officer corruptly acted or failed to act ; and this rule is peculiarly applicable where the official has judicial or quasi-judicial discretion in the premises.

In this case an administrative officer, having a discretionary power in descharging a statutory duty, is merely charged with not doing an official act that he could have done in his discretion.   He is not charged with any act that involves moral turpitude.   Nor is he charged with a breach

of official duty except as may result from an erroneous or mistaken exercise of official discretion in performing a statutory duty. The mere erroneous or mistaken exercise of discretion in performing an official duty is not a criminal offense under any statute, and is not malpractice in office for which criminal prosecution may be had under Section 5354, Revised General Statutes. Where the act charged as malpractice in office does not involve a moral wrong or an intentional breach or violation of official duty, but is merely a failure to do an official act that the officer could have done or refrained from doing in the exercise of discretion given him by law, such an act is not the malpractice in office that is made a crime by the cited statute. It is not alleged that defendant corruptly acted or failed to act in the matters alleged.

In the Kirkland case the *decision* was that the acts alleged in the indictment involving positive wrongdoing and breach of official duty, constituted malpractice in office within the meaning of the statute, without an allegation that the acts were wilfully or corruptly done. The broad general language used in the Kirkland case is to be regarded as restrained by the facts alleged in the indictment which show malpractice in office though a wilful or corrupt intent was not alleged.

In this case the officer exercised a discretion given him by law and the information does not allege acts involving moral turpitude or positive wrongdoing in the breach of official duty so as to make the matters charged amount to malpractice in office within the meaning of the statute without an allegation of a corrupt intent; and the acts and omissions charged are not alleged to have been with a corrupt intent, so as to charge a criminal offense under the laws of the State. See Throop on Public Officers, 856, 859. See also People v. Norton, 7 Barb. (N. Y.) 477; 29 Cyc. 1450; 17

Ency. Pl. & Pr. 254; 23 Am. & Eng. Ency. Law (2nd ed.)
383; State v. Flynn, 119 Mo. App. 712, text 728, 94 S. W.
Rep. 543; State v. Boyd, 196 Mo. 52, 94 S. W. Rep. 536;
State v. Powers, 75 N. C. 281.

TERRELL AND BROWN, J. J., concur.

STRUM, J. (dissenting):

I am unable to reconcile the majority opinion herein with
the former opinion of this Court in Kirkland v. State, 86
Fla. 130; 97 South. Rep. 510, in respect to the construction
to be placed under Section 5354, Revised General Statutes
1920.

I therefore dissent, but express no opinion as to whether
the indictment herein is good as against a motion to quash.

BUFORD, J. (dissenting):

After a careful study of this case, together with the very
able opinion of the majority of the Court prepared by Mr.
Chief Justice ELLIS, I find myself unable to concur in the
conclusion reached.

I am unable to reconcile the majority opinion in this case
with the opinion in the case of Kirkland v. State, in which
this Court construed Section 5354, Revised General Statutes
of Fla., in saying:

"That proposition has been settled by this Court in the
case cited by the Attorney General, Smith v. State, 71 Fla.
639, 71 South. Rep. 915, in which this Court held that it is
within the power of the Legislature to dispense with the
necessity for a criminal intent and to punish particular acts
without regard to the mental attitude of the doer. And
that Section 3481, General Statutes of 1906, which is now
Section 5354 of Revised General Statutes, denounces two
offenses; one wilful extortion in the charging of fees or

commissions by an officer of the State, and the other 'any malpractice in office not otherwise especially provided for' to which the word *'wilfully'* does not apply and in which it is not an element.   See also 2 Bishop's New Criminal Prac. Sec. 521-523 (1) ; 1 Bishop's New Criminal Law, Sec. 302-313.''

The statute referred to is quoted in the majority opinion and it appears to me that it was clearly the intent of the Legislature by the provisions of that section to condemn any malpractice in office not otherwise especially provided for, and that it was the intent of the Legislature not to limit the sort of malpractice to that which should consist of malpractice in regard to charging, receiving or collecting fees.   That the doctrine of *ejusdem generis* does not apply to this section of the statute.   It was distinctly stated in Kirkland v. State, *supra,* that one of the offenses condemned by the statute is ''any malpractice in office not otherwise especially provided for to which the word 'wilfully' does not apply and in which it is not an element.'' Neither do I concur in the conclusion reached in the majority opinion, that the action required of the Comptroller under the provisions of Section 4167 may be performed or not, such performance or non-performance being dependent upon the exercise of discretion by the Comptroller.   It appears to me that the provisions of this section are mandatory in directing what the Comptroller shall do under certain circumstances.   The Comptroller is chargeable with knowledge of the condition of banks under his supervision. The statutes have made it his duty to ascertain and to know the conditions of the banks and the Legislature has placed in his hands the authority and the machinery by which and through which he may and must acquire knowledge of such conditions.   He stands as the representative of the people between the unscrupulous, the careless, the inefficient or

the unfortunate banker and the public which entrusts its deposits to such institutions.

The words used in the statute, "reason to conclude," I take it, have the same meaning as "good reason to believe." It is a general principle of law that a person is presumed to know what it is his duty to know. State v. Quackenbush, 98 Minn. 515; 108 N. W. 953, and cases there cited.

Our statutes authorize and require the Comptroller to make, and cause to be made, investigations and examinations of State banks, and the section above referred to requires him to take possession of the property and business of any bank when from any examination made by him, or any bank examiner acting under his authority, he shall have "reason to conclude" that such bank is in an unsound and unsafe condition. What shall constitute such "reason to conclude" must necessarily be determined by the Comptroller, and in weighing the evidence of such facts, he must use honest, fair and impartial judgment, unaffected by any bias or prejudice, love, friendship, hatred, enmity, reward or the hope thereof, and when such judgment shall have been exercised by him he can not be deemed guilty of malpractice in office because of an error in judgment resulting either in assuming possession of the property and affairs of the bank, or in failing to do so. It therefore follows in this case that the indictment charges a conclusion that "Ernest Amos at the time and place aforesaid did then and there commit the offense of malpractice in office" and is defective in that in fails to allege that the official action complained of was the result of corruption, fraud, improper influence or other vicious motive. This is a defect, however, which goes to the sufficiency of the charge and may be properly tested by proper pleading. The first count of the indictment charges that the bank referred to at the time alleged was in an unsound and unsafe condition. It

alleges the particulars wherein its unsound and unsafe condition existed and it alleges that the Comptroller had knowledge of these facts and conditions and that he thereby had "reason to conclude" that the bank was then and there in an unsound and unsafe condition and that under these conditions he failed and neglected to perform that official duty specifically required by the statute to be performed by him, under such conditions.  It therefore appears to me that the indictment sufficiently charges an offense under the laws of the State of Florida to bring the case within the rule enunciated in *Ex Parte* Prince, 27 Fla. 196; 9 Sou. 659, and to authorize the issuance of *capias,* and that a *capias* issued thereunder constitutes sufficient authority for the arrest of the accused.  That defects in the indictment may be reached by proper pleadings in the court having jurisdiction of the cause.